1-00-1512 FOURTH DIVISION

NOVEMBER 21, 2002

RLI INSURANCE COMPANY, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee/Cross-Appellant, ) Cook County.

)

v. ) 

)

ILLINOIS NATIONAL INSURANCE COMPANY, ) Honorable 

) Albert Green,

Defendant-Appellant/Cross-Appellee. ) Judge Presiding.

JUSTICE HARTMAN delivered the modified opinion of the court upon denial of rehearing: 

Two insurance carriers dispute the extent of insurance coverage provided by defendant Illinois National Insurance Company (Illinois National), an Illinois insurance corporation, for claims arising out of an accident involving their insureds' garbage truck and an automobile.  After the underlying lawsuit was settled, plaintiff RLI Insurance Company (RLI), also an Illinois insurance corporation, sought a declaratory judgment and entry of a monetary judgment, alleging Illinois National was obligated to reimburse RLI in an amount up to and including $1.6 million which RLI had paid under Illinois National's coverages in settlement of the underlying claims.  RLI and Illinois National cross-moved for summary judgment, which the circuit court granted partially in favor of RLI and partially in favor of Illinois National.  Illinois National appeals and RLI cross-appeals.

The issues presented include whether (1) Illinois National unqualifiedly accepted responsibility of coverage for its insureds under its commercial general liability policy (CGL) through settlement under that policy; (2) Illinois National's separate payment of its settlement commitment under its business auto policy (BA) justifies its repudiation of coverage provided by its CGL policy; and (3) the "aggregate maximum limit" contained in Illinois National's BA policy, but not in Illinois National's CGL policy limits its obligation under its CGL policy.  On cross-appeal the issues raised include whether (1) the "anti-stacking" provision of Illinois National's BA policy applies to these circumstances; and (2) Illinois National's BA policy concerning underinsured motorists (UIM) is in harmony with Illinois law. 

On January 24, 1991, Michael Schneider, an employee of Haulaway, Inc. (Haulaway), was loading garbage into the back of a garbage truck when Hyang W. Yoo drove her car into Schneider, pinning him between the two vehicles.  Schneider suffered serious injuries and sought recovery from numerous defendants, including Yoo, C. Groot Automatic Disposal Company, Inc. (Groot Automatic Disposal), which owned the garbage truck involved in the accident, and Groot Industries, Inc., (Groot Industries) (collectively, the Groot defendants) the parent company of Haulaway and Groot Automatic Disposal, its wholly-owned subsidiaries.
(footnote: 1)  

On the date of Schneider's accident, Groot defendants and Haulaway were named insureds under two insurance policies issued by Illinois National and an umbrella policy issued by RLI.  

Illinois National's CGL policy provided insureds with liability insurance limits in the amount of $1 million per occurrence, but contained an exclusion for "'bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any *** 'auto' *** owned or operated by or rented or loaned to any insured.  Use includes operation and 'loading or unloading.'"
(footnote: 2)   Illinois National's BA policy provided insureds with automobile liability coverage limits in the amount of $1 million "for any one accident or loss."  An "anti-stacking clause" in the BA policy limited coverage when other policies or coverages provided by Illinois National applied to the same accident,
(footnote: 3) but did not take effect when any coverage form or policy issued by Illinois National or an affiliated company specifically applies as excess insurance over the BA coverage form.    

The BA policy also provided uninsured motorist (UM) coverage  in the amount of $1 million upon occurrence of "'bodily injury' sustained by the 'insured' caused by an 'accident.'"
(footnote: 4)    Any amount payable under the UM coverage, however, could be reduced by "[a]ll sums paid or payable under any workers' compensation, disability benefits or similar law" and "[a]ll sums paid by or for anyone who is legally responsible, including all sums paid under this Coverage Form's Liability Coverage."  

RLI's umbrella policy provided insureds with liability coverage in the amount of $5 million per occurrence subject to a schedule of underlying insurance including Illinois National's CGL and BA policies.  The RLI coverage had an automobile liability limitation which provided that it did not apply to the ownership, maintenance or use of a vehicle except as insofar as such coverage was provided by the underlying policies.
(footnote: 5)
 A letter dated September 3, 1992, from Marvin L. Donaldson, litigation specialist for American International Adjustment Company, Inc., informed Groot Industries that it received Schneider's summons and complaint and that Illinois National provides bodily injury and property damage coverage in the amount of $1 million.  Also in the letter, Donaldson assigned attorneys for the defense of the lawsuit and advised of the existence of certain coverage questions and the Groot defendants' need to retain personal counsel due to the possibility of judgment in excess of liability coverage.  The letter further stated that "[i]n the absence of any reply *** we will assume you will not have your own personal attorney participate, and we will proceed accordingly in the defense of this suit."  The letter made reference to Illinois National's CGL policy, but not the BA policy. 

In a letter dated September 29, 1992, Rick Dikeman, an RLI claims examiner, informed Groot Industries that it was reserving RLI's rights and defenses under its umbrella policy because the policy contained an automobile liability exclusion.
(footnote: 6)   

Susan Warnke was an AIG Claim Services, Inc. (AIG) claims representative who held primary responsibility for the Schneider claims.  AIG represented Illinois National in connection with the Schneider lawsuit.  Warnke testified by deposition that on November 23, 1993, she completed an internal coverage analysis for the Schneider matter.  The coverage analysis listed Illinois National's CGL policy number for the Groot defendants.  Warnke noted the potential for "excess exposure" and specifically found that the action was covered under the CGL policy and that the automobile exception would not apply because the vehicle was not operated by the insureds.  Warnke indicated the automobile exclusion would not apply in order for auditors to see why Illinois National decided to handle the claim under the CGL policy.  Warnke insisted in her testimony that technically, both the CGL and BA policies could not apply to the Schneider lawsuit because of the CGL policy's automobile exception and the BA policy's lack of coverage for product liability claims.  Nevertheless, Warnke concluded on the coverage analysis form that there were no coverage problems.

On November 2, 1994, Warnke authored a "high cost narrative update" memorandum in which she stated she "sent the excess carrier an update as we expect the initial demand will be in the are[a] of $6,000,000 and we estimate our contribution may be as high as 1/3."  Warnke testified that her memorandum was ambiguous and that she did not know whether she was referring to "'we' as the insured or 'we' as the carrier."

In the "Director's Evaluation Report," a summary of basic information on the Schneider claim, Warnke left blank an area of the form indicating whether a reservation of rights by Illinois National was required.  The report, dated November 7, 1994, stated that copies of the policies were received and reviewed.  The report further noted that after a conference with Warnke's supervisor, Richard Palatine, both confirmed coverage under the CGL policy "as the insured was not operating the vehicle at the time of loss."  In addition, the report did not make a distinction between the liability theories of Groot Industries and Groot Automatic Disposal.  

On February 3, 1995, Warnke received a letter from Robert Bright, director of claims litigation for RLI, which acknowledged Warnke's receipt of $1 million in settlement authority under the CGL policy, but questioned her determination that Illinois National's BA Policy did not apply.  Bright noted that "[t]here appears [
sic
] to be allegations which involve both policies" in that "[t]he allegations against Groot Disposal appear to primarily arise from the ownership, maintenance and use of a covered vehicle," while "[t]he allegations against Groot Industries primarily concern supervision and design of the vehicle."  Bright also acknowledged the potential for the RLI umbrella policy to be directly involved with the Schneider claim and recommended that Warnke refer the defense of the matter to RLI's trial counsel.
(footnote: 7)  

A second letter from Bright to Warnke, dated February 23, 1995, continued to disagree with Warnke's analysis of the potential application of Illinois National's CGL policy and BA policy because the liability theories as to Groot Automatic Disposal appeared to fit within the BA policy while the liability theories as to Groot Industries appeared to fit within the CGL policy.  Bright also questioned whether a provision in the BA policy could limit coverage under the CGL policy.

In a May 18, 1995 letter directed to Bright and Lawrence K. Rynning, RLI's defense counsel, Warnke stated that the CGL policy did not apply at all because it excluded liability "arising out of the ownership, maintenance, use or entrustment to others of any *** 'auto' *** owned or operated by or rented *** to any insured."  Warnke gave as another reason the CGL policy did not apply was that "[i]f we were providing coverage under one coverage form or policy [the BA policy], the anti-stacking provisions of the policy would prevent it from being covered under the general liability policy."  Notwithstanding this change in theory, Warnke never informed the Groot defendants of the change in her coverage analysis or that the Groot defendants potentially were not covered under the CGL policy.

Warnke received a letter from Rynning, dated July 6, 1995, responding to her change in coverage analysis.  Rynning presented several legal arguments as to why both the CGL and BA policies applied to the Schneider lawsuit and stated that he saw no correspondence directed to the Groot defendants advising them that the CGL policy did not apply and that Illinois National was reserving its rights under that policy.  

Warnke responded to Rynning's letter on July 12, 1995, noting that she did not send the Groot defendants any reservation of rights letter, explaining that "[w]e did not want to deny coverage under the [BA] policy because it does not provide coverage for products liability and at the same time deny coverage under the [CGL] policy because it does not cover liability arising out of the operation of an insured's automobile."  Warnke further stated that "[t]his would have been unfair to the insured and would indeed have been construed as providing illusory coverage.  Our decision to open up the claim under the [CGL] policy was purely arbitrary."  Warnke testified that she and Palatine made an "eenie-meeney-miney-mow" decision as to which coverage applied to the Groot defendants for the Schneider lawsuit.

Warnke also testified that Illinois National's UM coverage form was applicable to UIM coverage because Illinois National does not issue separate UIM forms.  Warnke stated that pursuant to statute, Illinois National had to include a specific endorsement for UIM coverage, but could not recall why any specific endorsement for UIM benefits was not included in the BA policy.

Rynning, in his July 6, 1995 letter to Warnke, stated that because workers' compensation benefits expected to be paid to Schneider would amount to nearly $1 million, UIM benefits would be unavailable to Schneider.  Rynning also pointed out that other set-off provisions which purport to reduce UIM benefits by payment under liability coverage forms issued by Illinois National are unenforceable.  Thereafter, Schneider filed a separate action against Illinois National and RLI claiming that he was entitled to UIM benefits under the policies issued to the Groot defendants.

On March 12, 1996, Warnke prepared a settlement conference report to home office examiner Don Schmitz that referenced only the CGL policy under which, from the onset of the litigation, the Schneider claim was handled.  Warnke recommended that Illinois National "settle up to $1,000,000."  

An April 2, 1996 memorandum authored by Warnke instructed her clerk to open a claim file for the Schneider matter under the BA policy.  Warnke testified that the change in policy coverage was made after the Schneider case had been settled by the circuit court on March 27, 1996.  Illinois National paid $1 million to Schneider under the BA policy pursuant to the $3.15 million settlement agreement.  RLI agreed to pay $1.6 million on behalf of the Groot defendants to fund the settlement.  As part of the settlement agreement, Schneider dismissed his claim for UIM benefits and RLI reserved its right to seek reimbursement from Illinois National for any additional coverage available under the CGL policy or as UIM benefits.

On September 6, 1996, RLI filed its complaint for declaratory judgment and for entry of monetary judgment, seeking reimbursement of $1.6 million on the ground that RLI paid amounts due and owing under Illinois National's CGL policy, BA policy and UIM coverage with respect to the Schneider settlement.  Illinois National denied that RLI was entitled to reimbursement in any amount and, as affirmative defenses, asserted that coverage for the Schneider claims was barred by the automobile exclusion in the CGL policy and that, because it had paid the $1 million aggregate limit of coverage for the Schneider accident, it did not owe any additional amounts for UIM benefits or CGL benefits, pursuant to the BA policy's anti-stacking clause.  

RLI and Illinois National cross-moved for summary judgment.

In its motion, RLI asserted that Illinois National improperly refused to authorize any more than $1 million toward the settlement of the Schneider claims.  According to RLI, Illinois National should have authorized up to $1 million under the CGL policy, up to $1 million under the BA policy and up to $900,000 under UIM coverage provided in the BA policy.  RLI argued that Illinois National's claims handling activities reflected the fact that it knew or should have known that both policies were applicable to the Schneider claims.  In its response to Illinois National's motion for summary judgment, RLI contended that because Illinois National did not defend the Schneider lawsuit under a reservation of rights or seek a declaratory judgment that its CGL policy did not apply thereto, it was estopped from relying on any exclusionary language or coverage defenses.  In addition, RLI alleged that Illinois National is not entitled to off-set any liability insurance payments against its liability for UIM coverage.

Illinois National argued in its summary judgment motion that RLI was not entitled to recoup its settlement payment because only the BA policy and not the CGL policy applied to the Schneider claims.  According to Illinois National, the available limits of the BA policy already have been paid.  Illinois National averred that the CGL's automobile liability exclusion and the BA policy's anti-stacking provisions entitled Illinois National to summary judgment in its favor as a matter of law.  In its response to RLI's motion for summary judgment, Illinois National argued that its claims handling is irrelevant to the determination of coverage and that the language of the policies controls the circuit court's determination of the issues.  In addition, Illinois National contended that its UIM coverage was not available by virtue of the BA policy's anti-stacking provision and, consequently, Illinois National had no obligation to reimburse RLI for any portion of RLI's settlement payment.  

Subsequent to a hearing on the parties' cross-motions for summary judgment, the circuit court found that Illinois National was required to provide coverage under the CGL policy for the settlement of the underlying claims and granted summary judgment in part for RLI.  The court noted that although Illinois National provided a defense for its insureds under one of the policies, it breached its duty to defend by not providing a defense under both of the policies and, therefore, was estopped from asserting any policy exclusions in both the CGL and BA policies.  According to the court, if Illinois National "believed that either or both of the policies would not provide coverage for the underlying claims, it should have filed a declaratory judgment action with regard to one or both of the policies or it should have agreed to defend the underlying suit with a reservation of rights."  The court also stated that Illinois National could not agree to defend a suit, represent to the insureds that it would provide coverage under the CGL policy and then arbitrarily change its mind and allow coverage only under the BA policy.

Next, the circuit court found that Illinois National was not required to provide UIM benefits under its BA policy, citing the BA policy's anti-stacking clause.  The court ruled that because Illinois National paid the maximum limit of insurance under the liability coverage section of the BA policy, the UIM benefits were not available.  The court then granted partial summary judgment in favor of Illinois National in this regard.   

Illinois National filed a timely notice of appeal and RLI, thereafter, cross-appealed.  

Summary judgment "shall be rendered without delay if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  735 ILCS 5/2-1005 (West 2000).  
In determining a summary judgment motion, the circuit court must construe the pleadings, affidavits, depositions and admissions on file strictly against the moving party and liberally in favor of the opponent.  
In re Estate of Hoover
, 155 Ill. 2d 402, 410-11, 615 N.E.2d 736 (1993).  The construction of terms contained in an insurance policy is a question of law appropriate for a summary judgment disposition.  
Continental Casualty Co. v. McDowell and Colantoni, Ltd.
, 282 Ill. App. 3d 236, 241, 668 N.E.2d 59 (1996).  In such a  situation, the reviewing court must determine whether judgment was entered correctly for the moving party as a matter of law.  
University of Illinois v. Continental Casualty Co.
, 234 Ill. App. 3d 340, 343, 599 N.E.2d 1338 (1992).  Summary judgment orders are reviewed 
de novo
.  
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 102, 607 N.E.2d 1204 (1992).

I

Illinois National asserts that the circuit court erred by granting RLI partial summary judgment because it: (1) misapplied the law of estoppel; (2) failed to rule that the auto liability exclusion in the CGL policy bars coverage of that policy; and (3) ordered Illinois National to pay $1 million to RLI in addition to the $1 million it already had paid to settle the Schneider lawsuit.  Illinois National argues that the maximum amount of liability owed was $1 million under the BA policy and that the court improperly doubled the limits of coverage provided by Illinois National for the Schneider claims.

Illinois National initially argues that the estoppel doctrine is inapplicable because it did not abandon its insureds; rather, it provided a defense to the Groot defendants.  Illinois National asserts that the Groot defendants have not claimed any prejudice that would preclude Illinois National from relying upon the automobile liability exclusion in the CGL policy in defense against RLI's reimbursement claim.  Illinois National insists that application of the estoppel rule here would provide a windfall for RLI because Illinois National's limit of coverage would be exceeded and RLI would be allowed to shift a portion of its coverage obligation to Illinois National.
(footnote: 8)
 In construing an insurance policy, the court's primary function is to ascertain and enforce the intentions of the parties as expressed in the agreement.  
Crum and Forster Managers Corp. v. Resolution Trust Corp.
, 156 Ill. 2d 384, 391, 620 N.E.2d 1073 (1993) (
Crum
).  To determine the intent of the parties and the meaning of the words in the insurance policy, the court considers the policy as a whole, taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured and the purposes of the entire contract.  
Crum
, 156 Ill. 2d at 391.  Words in the policy that are plain and unambiguous will be interpreted under their plain, ordinary meaning and will be applied as written.  
Crum
, 156 Ill. 2d at 391.  

To ascertain whether the insurer has a duty to defend the insured, the court must look to the allegations in the underlying complaint and compare them to the relevant provisions of the insurance policy.  
United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.
, 144 Ill. 2d 64, 73, 578 N.E.2d 926 (1991) (
Wilkin
); 
United States Fire Insurance Co. v. Aetna Life & Casualty
, 291 Ill. App. 3d 991, 997, 684 N.E.2d 956 (1997) (
United States Fire Insurance
).  If the facts alleged in the underlying complaint fall within or potentially within the policy's coverage, the insurer's duty to defend arises.  
Wilkin
, 144 Ill. 2d at 73; 
United States Fire Insurance
, 291 Ill. App. 3d at 997.  Refusal to defend is unjustifiable unless it is clear from the face of the underlying complaint that the facts alleged do not fall potentially within the policy's coverage.  
Wilkin
, 144 Ill. 2d at 73; 
United States Fire Insurance
, 291 Ill. App. 3d at 997.  The insurer's duty to defend is much broader than its duty to indemnify the insured.  
Crum
, 156 Ill. 2d 394-95.

When an insurer is uncertain as to its duty to defend, it must either seek a declaratory judgment as to its obligations and rights prior to trial or settlement of the underlying action or defend under a reservation of rights or both.  
Insurance Co. of Pennsylvania v. Protective Insurance Co.
, 227 Ill. App. 3d 360, 365, 592 N.E.2d 117 (1992) (
Protective Insurance
).  Failure to take  one of these courses of action and refusal to defend an insured who ultimately incurs an adverse judgment, estops the insurer from raising policy exclusions or noncoverage as a defense in any subsequent action brought to recover policy proceeds.
(footnote: 9)  
Protective Insurance
, 227 Ill. App. 3d at 365.  Failure to assert a defense of noncoverage, however, must result in some prejudice to the insured.  
Maryland Casualty Co. v. Peppers
, 64 Ill. 2d 187, 195, 355 N.E.2d 24 (1976) (
Peppers
).

Whether an insured is prejudiced by an insurer's conduct in assuming the defense of an action is a question of fact.  
Peppers
, 64 Ill. 2d at 196.  Where the insurer's assumption of the defense has induced the insured to surrender his right to control his or her own defense, he or she has suffered a prejudice which will support a finding that the insurer is estopped to deny policy coverage.  
Peppers
, 64 Ill. 2d at 196.  A party claiming the benefit of estoppel must prove reasonable reliance upon the acts or representations of the party sought to be estopped, without the knowledge of or convenient means of learning the true facts.
(footnote: 10)  
National Ben Franklin Insurance Co. v. Davidovitch
, 123 Ill. App. 3d 88, 93, 462 N.E.2d 696 (1984).

Illinois National, citing 
Mid-State Savings & Loan Association v. Illinois Insurance Exchange, Inc.
, 175 Ill. App. 3d 265, 272, 529 N.E.2d 696 (1988) (
Mid-State Savings
), maintains that mere delay in raising the issue of noncoverage is not sufficient to establish prejudice by clear, concise and unequivocal evidence.
(footnote: 11)  The instant case, however, involves more than "mere delay."

In 
Westchester Fire Insurance Co. v. G. Heileman Brewing Co.
, 321 Ill. App. 3d 622, 633, 747 N.E.2d 955 (2001) (
Westchester
), quoting 
Reis v. Aetna Casualty & Surety Co.
, 69 Ill. App. 3d 777, 782, 387 N.E.2d 700 (1978), the appellate court noted that "'a liability insurer in doubt over whether to defend its insured cannot simply stand on the sidelines and wait until the tort action is complete before contesting the question of coverage.'"  The court also found "'the most important factor *** is not the raw chronological delay in an insurer's filing a declaratory judgment action, but whether the insurer waited until trial or settlement was imminent.'"  
Westchester
, 321 Ill. App. 3d at 634, quoting 
Providence Hospital v. Rollins Burdick Hunter of Illinois, Inc.
, 824 F. Supp. 131, 136 (N.D. Ill. 1993).  The court concluded that the time period between notice of an underlying action and filing of a declaratory judgment was not determinative of whether estoppel applies.  
Westchester
, 321 Ill. App. 3d at 634.

In the instant case, Illinois National agreed to defend the insureds under one of its policies, but subsequently switched its coverage without notifying the insureds of its decision to do so.  The record shows Illinois National received notice of the underlying action in September 1992.  Schneider's underlying complaint, as amended, alleged that at the time of the accident, he was an employee of Haulaway, which leased its garbage truck from Groot Automatic Disposal.  According to the allegations in the complaint and considering Illinois National's definition of an "insured," Haulaway and the Groot defendants were insureds within the terms of the policies provided by Illinois National.  Therefore, Illinois National became obligated to defend the Groot defendants (Haulaway was not a party in the underlying suit), despite the possibility that their coverage might be excluded.

Although Illinois National agreed to defend its insureds in September 1992, it informed the insureds that it would defend the Schneider claims under the CGL policy.  The Groot defendants never received any correspondence from Illinois National reserving its rights under either of the policies or notifying them of any coverage problems, despite Illinois National's awareness of potential coverage problems.  Not until 
after
 a settlement was reached four years later did Illinois National arbitrarily decide to change its coverage of the Schneider claims to the BA policy.  

A finding that the insureds were prejudiced is warranted in the instant case because once Illinois National switched coverages, the insureds suffered to their detriment due to the coverage limitations in the BA policy's anti-stacking clause.  The BA policy's anti-stacking clause prevented the insureds from further coverage other than the maximum $1 million limit under that policy.  Moreover, Warnke, the claims representative responsible for making the decision to change coverages, stated that her decision to switch was based on the fact that coverage under the BA policy would prevent insureds from being covered under the CGL policy because of the anti-stacking provisions.  Therefore, her decision to make the switch was not based solely on "eenie-meeney-miney-mow" implications.

An insurer has a duty of fairness to its insureds and may not put its own interest ahead of the protection of its insureds.  
Village of Lombard v. Intergovernmental Risk Management Agency
, 288 Ill. App. 3d 1003, 1013, 681 N.E.2d 88 (1997).  An insurer owes its insureds a duty of fair dealing and has no right to manipulate an action in order to excuse itself from protecting its insureds.  
Briseno v. Chicago Union Station Co.
, 197 Ill. App. 3d 902, 906, 557 N.E.2d 196 (1990).

Illinois National's policies in the present case demonstrate that it could have applied either or both the CGL and BA policies to the Schneider claims.  Illinois National's desire to limit its payment by switching coverage to the BA policy after settlement illustrated an intention to put its own interests ahead of the insureds and prejudiced the Groot defendants by exposing them to liability beyond their coverage.  

Accordingly, the circuit court properly found that Illinois National was estopped from asserting any policy exclusions in the CGL or BA policies.  The court's ruling partially granting RLI's motion for summary judgment is affirmed.

II

RLI asserts in its cross-appeal that circuit court erred by granting partial summary judgment in favor of Illinois National on RLI's claim for UIM coverage for Schneider's injuries.  RLI argues that the BA policy's anti-stacking provisions do not bar UIM coverage for the Schneider matter because the anti-stacking clause affects two separate and disparate coverages, which apply to different risks and insureds, and are based upon distinct concepts.  RLI does not dispute that in the context of avoiding stacking of similar coverages Illinois National's provision is unambiguous.  RLI insists, however, that the provision must be construed as ambiguous in the context that Illinois National's anti-stacking clause improperly has been construed to affect separate liability coverages, and prevents application of the UIM coverage owed Schneider insofar as those funds affect the totality of the settlement, which invoked liability coverage owed to the Groot defendants.

An insurance policy will be enforced as written if it is not ambiguous and only to the extent it does not violate public policy.  
Gibbs v. Madison Mutual Insurance Co.
, 242 Ill. App. 3d 147, 152, 610 N.E.2d 143 (1993) (
Gibbs
).  Subsequent to July 1, 1983, Illinois required UIM coverage in insurance policies.  215 ILCS 5/143a-2(4) (West 2000).  The legislature's intent in enacting the underinsured motorist provision was to place the insured in the same position he or she would have occupied if the tortfeasor had carried adequate insurance.  
Gibbs
, 242 Ill. App. 3d at 154.  "The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under the applicable bodily injury insurance policies, bonds or other security maintained on the underinsured motor vehicle."  215 ILCS 5/143a-2(4) (West 2000).

UIM statutory provisions also state that 
"[n]othing herein shall prohibit an insurer from setting forth policy terms and conditions which provide that 
if the insured has coverage available under this Section under more than one policy or provision of coverage, any recovery or benefits may be equal to, but may not exceed, the higher of the applicable limits of the respective coverage
, and the limits of liability under this Section shall not be increased because of multiple motor vehicles covered under the same policy of insurance."  (Emphasis added.)  215 ILCS 5/143a-2(5) (West 2000).

In 
Gibbs
, relied upon by RLI, plaintiffs, passengers injured in an automobile driven by insured, sought to stack both bodily injury liability and underinsured motorist coverages.  Plaintiffs also challenged a declaratory judgment providing defendant insurer with a set-off for what it paid under the bodily injury liability section against what it owed under the underinsured motorist provision, and vice-versa.  The court found the anti-stacking provisions in the disputed policy to be ambiguous because the clause could be read in more than one way and, therefore, plaintiffs could stack the coverages.  
Gibbs
, 242 Ill. App. 3d at 147-48.

Further, the 
Gibbs
 court held that no set-off should be allowed for payment under the bodily injury section or for payment under the underinsured motorist section because the two were completely different methods of recovery.  242 Ill. App. 3d at 153-54.  The court, however, did allow the underinsured portion of the policy to be off-set by the amount paid by the second tortfeasor's insurance company.  Noting the supreme court's decision in 
Hoglund v. State Farm Mutual Automobile Insurance Co.
, 148 Ill. 2d 272, 280-81, 592 N.E.2d 1031 (1992) (
Hoglund
), the 
Gibbs
 court found that under both the policy provision and pertinent underinsured motorist statutes, defendant was entitled to a set-off for coverage only to the extent necessary to prevent double recovery.  242 Ill. App. 3d at 155, 157.  

Here, both parties agree that the BA policy includes UIM coverage in the amount of $1 million.  Pursuant to statute, Illinois National was required to include a specific endorsement for UIM coverage in the BA policy, but did not do so.  Nevertheless, Warnke's testimony concluded that UIM coverage was applicable to the terms provided in the UM coverage form attached to the BA policy because Illinois National does not issue separate UIM forms.  Accordingly, UIM coverage must be read into the terms provided in the UM coverage form, which includes a set-off provision substantially similar to the wording found in 
Gibbs
.

The exculpatory language found in the instant set-off provision cannot be read in isolation but must be read in conjunction with the policy holder's reasonable expectations, along with the public policy behind the statute and the coverage intended by the insurance policy itself.  
Hoglund
, 148 Ill. App. 3d at 279.  Here, Schneider sought to recover under the policy issued to the Groot defendants for liability coverage because of their degree of fault in the accident and Yoo's status as an underinsured driver.  Similar to 
Gibbs
, recovery under the BA policy is separate and disparate from UIM coverage because each involves two different kinds of liability.  Consequently, a latent ambiguity in the policy language is disclosed.  
Hoglund
, 148 Ill. 2d at 279-80; 
Gibbs
, 242 Ill. App. 3d at 156.  In Illinois, any ambiguity in an insurance policy must be construed in favor of coverage for the insured.  
Hoglund
, 148 Ill. 2d at 280.

Therefore, following 
Hoglund
 and 
Gibbs
, as a matter of law, Illinois National is entitled to a set-off under the 
de
 
facto
 UIM coverage provisions only for the $100,000 paid by Yoo's insurance company.  In the Schneider settlement, RLI reserved its right to seek reimbursement from Illinois National under the UIM provisions and, on remand, is entitled to recover an amount not in excess of $1.6 million.

Based on the foregoing, the judgment of the circuit court of Cook County granting partial summary judgment in favor of RLI is affirmed; the grant of partial summary judgment in favor of Illinois National is reversed and remanded with directions to enter judgment in favor of RLI in an amount not to exceed $1.6 million.

Affirmed in part and reversed in part; cause remanded with directions.

THEIS, P.J., and HOFFMAN, J., concur.

FOOTNOTES
1:
Schneider's civil claims against the Groot defendants sounded in product liability and negligence.  The product liability count claimed the garbage truck was placed into the stream of commerce when it was unreasonably dangerous because it required rear loading and unloading, did not have proper lighting to warn oncoming motorists, did not have reflective clothing for its garbage haulers and did not include adequate operating instructions.  The negligence count was based upon the same factual allegations as the product liability count and alleged that the Groot defendants failed to eliminate job risks to truck operators by providing proper lighting systems, reflective clothing and instructions on eliminating those job risks.  

2:
The policy defines the term, "auto," as a "land motor vehicle," which includes the garbage truck in the instant case.

3:
Illinois National's anti-stacking clause provides:

"If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same 'accident,' the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy.  This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form."

4:
It should be noted that whether the BA policy includes underinsured motorist (UIM) coverage is unclear from the record.  Item two in the BA policy declarations includes the schedule of coverages and covered autos and states that "[t]his policy provides 
only those coverages where a charge is shown in the premium column below
."  (Emphasis added.)  In the schedule column for UM coverage, there are entries indicating coverage for "covered autos" with a limit of $1 million included in the premium.  The schedule column for UIM coverage is blank although the schedule allows for coverage of underinsured motorists "when not included in UM coverage."  The BA policy does not contain a separate coverage form for underinsured motorists and the UM coverage form does not discuss UIM coverage.  In Illinois National's answer and affirmative defenses to Schneider's complaint, however, Illinois National stated that its BA policy contained UIM coverage with maximum limits of $1 million.  

5:
RLI's automobile liability limitation states:

"Except insofar as coverage is available to the Insured in the underlying insurances as set forth in the Schedule of Underlying Insurance of the Policy, this Policy shall not apply to the ownership, maintenance, operation, use, loading or unloading of any automobile while away from premises owned by, rented to or controlled by the Insured, provided, however, that this exclusion does not apply with respect to operations performed for the Insured by independent contractors or with respect to Liability assumed by the Insured under written contract."

6:
It should be noted that Illinois National, in its reply brief, cites this letter as proof that the insureds had actual notice of Illinois National's defenses under its CGL policy.  Illinois National's CGL policy, however, is not at all discussed in the letter and, therefore, cannot not be considered as actual notice of the CGL policy's automobile liability exclusion.

7:
Warnke allegedly responded to Bright's letter on February 7, 1995; however, that letter is not in the record.

8:
Illinois National argues that even in cases where estoppel may be appropriate, it cannot be used to expand coverage to risks that are not covered under a policy or to eliminate limits of coverage provided, especially given the fact that RLI agreed that the automobile liability exclusion barred coverage for the Schneider claims.  18 Couch on Insurance Law §71:40 (1983).  In making this argument, Illinois National does not cite Illinois law, but relies on a letter in the record from RLI to the insureds, discussed previously in footnote 6.  Illinois National apparently believes that the automobile liability exclusion referred to in that letter is theirs; however, RLI made a reservation of rights for its own automobile liability exclusion in endorsements FF-05 and E-037, both of which are in RLI's insurance policy.  Contrary to Illinois National's assertions, the record does not show that RLI agreed that Illinois National's automobile liability exclusion under the CGL policy barred coverage for the Schneider claims.

9:
RLI argues in addition to estoppel that, under a waiver theory, Illinois National, by its claims handling procedures, precluded itself from claiming policy exclusions.  See 
Western Casualty & Surety Co. v. Brochu
, 105 Ill. 2d 486, 475 N.E.2d 872 (1985) (
Brochu
).  RLI raises its waiver argument for the first time on appeal.  Questions not raised in the circuit court are deemed waived and may not be raised for the first time on appeal.  
Brochu
, 105 Ill. 2d at 500.

10:
Although RLI is claiming the benefit of estoppel and not the insureds, Illinois case law has demonstrated circumstances involving attempts to prove prejudice to the insured by the excess insurance carrier.  See 
Royal Insurance Co. v. Process Design Associates, Inc.
, 221 Ill. App. 3d 966, 976-78, 582 N.E.2d 1234 (1991).

11:
The cases upon which Illinois National relies, namely 
Mid-State Savings
,
 
Old Mutual Casualty Co. v. Clark
, 53 Ill. App. 3d 274, 368 N.E.2d 702 (1977) (
Clark
) and 
Royal Globe Insurance Co. v. Tutt
, 108 Ill. App. 3d 69, 438 N.E.2d 943 (1982) (
Tutt
) are inapplicable to the instant case.  In 
Mid-State Savings
, plaintiff  insureds were consistently represented by their own private attorneys in the underlying action in addition to those hired by the insurer.  Likewise, 
in 
Clark
, no prejudice was found where insureds failed to prove injury from the engagement of their own counsel. Here, the record shows the Groot defendants relied solely on counsel provided by Illinois National.

The insurer in 
Tutt
 notified the insured of a reservation of rights 10 months after a motion to dismiss was filed in the underlying case.  The circuit court applied a conclusive presumption of prejudice to the insured although no allegation of actual prejudice was alleged in the motion.  The 
Tutt
 court reversed the circuit court's decision, finding that prejudice to the insured was not shown.  The present case, on the other hand, demonstrates prejudice because Illinois National was aware of potential coverage problems, but failed to reserve its rights under the disputed coverages or seek a declaratory judgment, thereby exposing the insureds to excess liability beyond Illinois National's coverage.