2021 IL App (1st) 210531-U

FIFTH DIVISION
August 20, 2021

No. 1-21-0531

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | |
|---|---|
| WESTFIELD INSURANCE COMPANY, | ) Appeal from the Circuit Court of |
| | ) Cook County. |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) No. 19 CH 13751 |
| | ) |
| BOARD OF EDUCATION OF THE CITY OF CHICAGO, | ) |
| | ) Honorable |
| | ) Alison C. Conlon, |
| Defendant-Appellee. | ) Judge Presiding. |

PRESIDING JUSTICE DELORT delivered the judgment of the court.
Justices Hoffman and Rochford concurred in the judgment.

**ORDER**

¶ 1     *Held:* The circuit court did not abuse its discretion by staying a declaratory judgment action regarding insurance coverage pending resolution of the underlying tort case.

¶ 2     This interlocutory appeal arises from a declaratory judgment action filed by plaintiff Westfield Insurance Company (Westfield), seeking a declaration that it does not owe a duty to defend or indemnify defendant Board of Education of the City of Chicago (Board) for workers' compensation benefits the Board paid to Michael Delmonico, one of its employees. Delmonico, filed a personal injury action against Westfield's insured, Total Facility Maintenance, Inc. (TFM),

after sustaining injuries from a fall allegedly caused by TFM, a janitorial service company that had contracted with the Board. Westfield and the Board filed cross-motions for summary judgment concerning the Board's claim for coverage as an additional insured under Westfield's commercial general liability (CGL) insurance policy insuring TFM. The circuit court denied both parties' motions and stayed the declaratory judgment action pending the resolution of the underlying tort lawsuit filed by Delmonico because it concluded that the outcome of that case could help frame the insurance coverage issues. Westfield appeals only the stay order, arguing, among other issues, that the court abused its discretion by issuing the stay instead of ruling immediately on the merits of the insurance coverage issues. We affirm.

¶ 3                                    BACKGROUND

¶ 4      TFM obtained a CGL policy from Westfield effective December 1, 2007 through December 1, 2008, the pertinent terms of which include the following:

> "Throughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. *** The word 'insured' means any person or organization qualifying as such under Section II-Who is an Insured."

¶ 5      An endorsement amended the definition of "Who Is An Insured" to include as an additional insured:

> "[A]ny person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability

for 'bodily injury,' 'property damage,' or 'personal and advertising injury' caused,
in whole or in part, by:

1. Your acts or omissions; or

2. The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured. A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed."

¶ 6     The agreement for coverage involving bodily injury and property damage states that Westfield "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' and 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply."

¶ 7     On January 22, 2008, Delmonico, a teacher at Corliss High School and an employee of the Board, allegedly slipped and fell in a hallway that had been waxed, buffed, and treated by TFM. TFM provided janitorial and maintenance services to Chicago Public Schools under a contract with the Board. Pertinent here, the contract between the Board and TFM provided:

"**31. <u>Compliance</u>:** Bidder [TFM] shall be appropriately licensed, insured, bonded and shall meet all other requirements specified in this Contract.

                                        ***

**42. <u>Indemnification</u>:** Bidder [TFM] agrees to defend, indemnify and hold harmless the Board, and its respective Board members, employees, agents, officers and officials from and against all liabilities, losses, penalties, damages and, expenses,

3

including costs and attorney fees, arising out of all claims, liens, damages, obligations, actions, suits, judgments or settlements, or causes of action, of every kind, nature and character arising or alleged to arise out of the negligent or willful acts or omissions of Bidder, its officials, agents and employees in the performance of this Contract.

\*\*\*

**44. <u>Insurance</u>:** Bidder [TFM], at its own expense, shall procure and maintain insurance for all operations under this Contract, whether performed by Bidder or by subcontractors. \*\*\* Minimum insurance requirements are:

a. **<u>Workers' Compensation and Employers' Liability Insurance</u>.** Workers' Compensation Insurance affording workers' compensation benefits for all employees as required by law and Employers' Liability Insurance with limits of not less than Five Hundred Thousand and 00/100 Dollars ($500,000.00) per occurrence for accident and disease. The workers' compensation policy shall contain a waiver of subrogation clause.

b. **<u>Commercial General Liability Insurance</u>.** Commercial General Liability Insurance or equivalent with limits of not less than One Million and 00/100 Dollars ($1,000,000.00) per occurrence and Two Million and 00/100 ($2,000,000.00) in the aggregate for bodily injury, personal injury and property damage liability. Coverage shall include, but not be limited to: all operations, contractual liability, independent contractors, products/completed operations (for a minimum of two (2) years following completion) and defense.

\*\*\*

**Additional Insured.** Bidder [TFM] shall have its General [insurance policy] endorsed to provide that <u>the Board of Education and the City of Chicago, a body politic and corporate, and its members, employees and agents, and any other entity as may be designated by the Board are named as additional insured on a primary basis without recourse or right of contribution from the Board</u>."

¶ 8    On May 6, 2009, Delmonico filed a workers' compensation claim with the Illinois Workers' Compensation Commission (No. 09 WC 19751). Delmonico also filed a personal injury lawsuit against TFM in the circuit court of Cook County on July 19, 2017 (*Delmonico v. Total Facility Maintenance, Inc.*, No. 17 L 7278).

¶ 9    In the personal injury lawsuit, Delmonico alleged that TFM contracted with the Board to provide professional custodian management services, including cleaning and treating the hallway floors at Corliss High School. He claimed that TFM "had a duty to use reasonable care in the maintenance and care of said hallway floor, including to ensure that it was not rendered unsafe due to [TFM's] floor maintenance work." The complaint also alleged that TFM violated its duty and was negligent by, among other things, (1) failing to maintain and treat the floor in a manner which was safe; (2) causing or allowing a foreign substance to be present on the floor manifesting in an unreasonably dangerous condition when it knew or should have known that the presence of such foreign substance would render the hallway unsafe to pedestrian traffic; and (3) allowing the hallway floors to remain in a condition that was unreasonably slippery. Delmonico alleged that, as a proximate result of one or more of the foregoing negligent acts or omissions of TFM, he fell and sustained severe injuries to his head and back.

¶ 10    Westfield is defending TFM in Delmonico's personal injury case. The Board is not a party to that case.

5

¶ 11    On July 1, 2019, the Board sent correspondence to TFM's counsel in the Delmonico case tendering the defense and indemnity of the workers' compensation claim against the Board. The letter stated that, to date, the Board had paid $282,579.15 to Delmonico for the workers' compensation claim, in addition to costs and fees in defense of that action. The Board stated that, in accordance with the contract, TFM was "obliged to indemnify, defend and hold the Board harmless because the workers' compensation arose out of injuries caused [by TFM] while they were performing services under the Contract." The Board also demanded that TFM "provide the policy and proof of coverage for Workers' Compensation Insurance that was required under the Contract."

¶ 12    On November 27, 2019, Westfield filed a complaint for declaratory judgment against the Board and Delmonico, seeking a declaration that it does not owe a duty to defend or indemnify the Board with respect to the pending Delmonico workers' compensation case.[1] The declaratory judgment complaint includes the allegations from the Delmonico tort case, specifically that "TFM allegedly failed to ensure the hallway floor was not rendered unsafe due to TFM's floor maintenance work." Westfield alleged that it did not owe a duty to defend or indemnify the Board because, among other things, (1) Westfield never issued a workers' compensation policy of insurance to TFM or the Board; and (2) the Board does not qualify as an additional insured under its CGL policy "with respect to the workers' compensation case because [it] does not create any 'liability' of the Board, as stated in the [CGL] policy." Westfield also alleged that the Board did

---

[1]    The Board filed a third-party complaint against TFM for indemnification, breach of contract, and fraud. TFM moved to dismiss the third-party complaint, and the circuit court granted the motion in part and denied the remainder as moot due to the oral withdrawal of the remaining claims.

not qualify as an insured under the umbrella portion of the CGL policy and that its exclusions precluded coverage.

¶ 13 The parties filed cross-motions for summary judgment. Westfield argued that the Board sought coverage for a workers' compensation claim instead of the tort lawsuit and, therefore, TFM's acts or omissions were immaterial. Under the Illinois Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 2018)), the Board had a statutory duty to compensate Delmonico for his claimed injuries regardless of whether TFM committed negligence. Westfield contended that the Board's duties "do not and could not in any way depend upon the 'acts or omissions' of TFM," but rather, are based solely on the employment relationship between Delmonico and the Board. The Board responded that such a determination was premature and is dependent upon the outcome of the tort lawsuit.

¶ 14 The circuit court agreed with the Board and found that under the plain language of the CGL's endorsement, "if TFM caused Delmonico's injuries by its acts or omissions, in whole or in part, then this Court could reasonably conclude that the Board would not have been subject to workers' compensation liability but for TFM's conduct. In other words, had TFM not acted negligently, the workers' compensation proceedings would not have occurred." The court also stated that, "[c]onversely if TFM is found not liable in the [tort case], then the Board's workers' compensation liability did not arise from bodily injury caused by TFM's acts or omissions, but rather from the Board's status as an employer. These determinations will affect the analysis of whether the Board is an 'additional insured' under the CGL policy. Their pendency creates a genuine issue of material fact that precludes summary judgment at this time."

¶ 15 The circuit court thus denied the parties' motions for summary judgment. The court stayed this case pending the resolution of the Delmonico tort lawsuit. This interlocutory appeal under

Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017) followed, in which Westfield appealed that portion of the order "staying the declaratory judgment action pending resolution" of the tort case.

¶ 16                                      ANALYSIS

¶ 17    Westfield argues that the circuit court abused its discretion by staying the declaratory judgment action because the determination of the duty to defend and indemnify involves only a legal analysis rather than a factual determination in Delmonico's pending workers' compensation and personal injury cases. Westfield contends neither party requested a stay of the proceedings and that the Board pled and argued that a determination of the duty to indemnify was premature because the Board "is not legally obligated to pay damages while Delmonico's personal injury and workers' compensation claims are still pending." Westfield also argues that a determination of whether its policy exclusions apply and whether the Board qualifies as an additional insured are issues of law that are ripe for determination immediately.

¶ 18                               Standard of Review

¶ 19    An interlocutory appeal under Rule 307(a)(1) provides a limited scope of review. Ill. S. Ct. R. 307(a)(1) (eff. Nov. 1, 2017); see also *Marzouki v. Najar-Marzouki*, 2014 IL App (1st) 132841, ¶ 8 (finding that a stay order is injunctive "in nature" and immediately appealable under Rule 307(a)(1)). "In such an appeal, the only question properly before the reviewing court is whether there was a sufficient showing made to the [circuit] court to sustain its order granting or denying the interlocutory relief sought." *Postma v. Jack Brown Buick, Inc.*, 157 Ill. 2d 391, 399 (1993). Our supreme court specifically has held that Rule 307(a)(1) "may not be used as a vehicle to determine the merits of a plaintiff's case." *Id.* (citing *Buzz Barton & Assoc. v. Giannone*, 108 Ill. 2d 373, 386 (1985)). We decline to address the insurance coverage issues on the merits at this time

and instead limit our review under Rule 307(a)(1) to determine the propriety of the circuit court's stay order. *Id.*; see also *Disciplined Investment Advisors, Inc. v. Schweihs*, 272 Ill. App. 3d 681, 691 (1995) (finding the scope of an appeal under Rule 307(a)(1) is limited to "consideration of only the propriety of the order appealed from").

¶ 20    Generally, a circuit court's decision to issue a stay will not be disturbed on appeal absent an abuse of discretion. *Estate of Bass v. Katten*, 375 Ill. App. 3d 62, 67 (2007); *Khan v. BDO Seidman, LLP*, 2012 IL App (4th) 120359, ¶ 58. An abuse of discretion is the most deferential standard of review recognized by law and occurs only when the circuit court "acted arbitrarily without the employment of conscientious judgment or, in view of all the circumstances, exceeded the bounds of reason and ignored principles of law so that substantial prejudice resulted." *Estate of Bass*, 375 Ill. App. 3d at 67; see also *Khan*, 2012 IL App (4th) 120359, ¶ 82. "With respect to a stay, a [circuit] court does not act 'outside its discretion' by staying a proceeding in favor of another proceeding 'that could dispose of significant issues.' " *Cholipski v. Bovis Lend Lease, Inc.*, 2014 IL (1st) 132842, ¶ 40 (quoting *Khan*, 2012 IL App (4th) 120359, ¶ 62). "A stay is generally considered 'a sound exercise of discretion' if the other proceeding 'has the potential of being completely dispositive.' " *Id.* (quoting *Khan*, 2012 IL App (4th) 120359, ¶ 60). However, *de novo* review is applied when the question involved is whether the circuit court exercised its discretion "within the bounds of law." *People v. Smith*, 233 Ill. 2d 1, 15 (2009). Here, as a matter of law, the circuit court has "the inherent authority to act *sua sponte* (*Circle Management LLC v. Olivier*, 378 Ill. App. 3d 601, 614 (2007)) and "may stay proceedings as part of its inherent authority to control the disposition of the cases before it." *Estate of Bass*, 375 Ill. App. 3d at 68.

¶ 21    "A stay order seeks to preserve the status quo existing on the date of its entry and does not address in any way the merits of the underlying dispute." *Id*. The circuit court "may consider

factors such as the orderly administration of justice and judicial economy in determining whether to stay proceedings." *Id.*

¶ 22                                      Propriety of the Stay Order

¶ 23    In this case, the circuit court entered a stay order on the basis that the declaratory judgment action would require factual determinations that go to the heart of the underlying Delmonico tort lawsuit, namely, whether TFM's acts or omissions caused injury to Delmonico. Under the *Peppers* doctrine, a circuit court hearing an insurance coverage dispute cannot make determinations of ultimate fact critical to the underlying tort case. *Maryland Casualty Co. v. Peppers*, 64 Ill. 2d 187, 197 (1976). "Specifically, any determination of ultimate facts upon which liability or recovery might be found in an underlying case is precluded from review." *Pekin Insurance Co. v. Johnson-Downs Construction, Inc.*, 2017 IL App (3d) 160601, ¶ 11 (citing *Landmark American Insurance Co. v. NIP Group, Inc.*, 2011 IL App (1st) 101155, ¶ 59).

¶ 24    Westfield argues that the coverage questions in this case require a legal analysis framed by the pleadings or additional undisputed facts rather than the determination of an "ultimate fact" in the Delmonico tort lawsuit. According to Westfield, Delmonico was acting as an employee of the Board at the time of his injury and that, because this is necessarily the main premise of any claim for benefits under the Workers' Compensation Act, the policy exclusions for workers' compensation apply on their face and the Board does not qualify as an additional insured. Westfield contends that the coverage questions are not dependent upon the acts or omissions of TFM, but rather are simply legal questions based on undisputed facts. Further, the Board is not a party to the

underlying litigation and, thus, not at risk of having any findings made against it under the doctrine of collateral estoppel.[2]

¶ 25    In *Peppers*, our supreme court held the circuit court's ruling that the injury was intentional was one of ultimate fact that could bind the parties to the underlying litigation. *Peppers*, 64 Ill. 2d at 196-97. This court in *TIG Insurance Co. v. Canel*, 389 Ill. App. 3d 366, 374 (2009) ruled that determining whether Canel Associates knew or should have known that a claim would be made before the insurance policy took effect was an "ultimate fact [ ] upon which recovery is predicated in the underlying action." In *Metropolitan Property & Casualty Insurance Co. v. Pittington*, 362 Ill. App. 3d 220, 229 (2005), this court concluded Pittington's argument that the injury was not expected, anticipated, or intended was not one of ultimate fact because the "underlying tort suit is based solely on theories of negligence." Also, this court in *Landmark American Insurance*, 2011 IL App (1st) 101155, ¶ 61, determined that whether faxes are covered under the insurance policy was not an issue of ultimate fact when the nature and extent of the faxes were not a deciding factor in the underlying cases.

¶ 26    Westfield cites *Pekin Insurance* in support of its argument that, when the insurance coverage determination does not turn on issues of disputed fact in the underlying case, the declaratory judgment case should proceed. In *Pekin Insurance*, the defendant, Johnson-Downs

---

[2]     Westfield disingenuously claims that the doctrine of collateral estoppel would not apply because the Board is not a party to the underlying tort lawsuit. In its brief, however, Westfield listed the factors required to apply collateral estoppel, one of which is that " 'the party against whom estoppel is asserted must have been a party or *in privity* with a party in the prior action.' " (Emphasis added.) *Mabie v. Village of Schaumburg*, 364 Ill. App. 3d 756, 758 (2006). TFM contracted with the Board to provide janitorial services. The Board employed Delmonico and, therefore, is a party in privity due to the contract. See *Purmal v. Robert N. Waddington and Assoc.*, 354 Ill. App. 3d 715, 722-23 (2004) (quoting Black's Law Dictionary 1199 (6th ed. 1990)) (" 'Privity' " is defined as " '[d]erivative interest founded on, or growing out of, contract, connection, or bond of union between parties; mutuality of interest.' ").

Construction, Inc., had contracted with Art's Landscaping, Inc. An Art's employee was injured at the construction site and sued Johnson-Downs for negligence. Pekin filed a declaratory judgment action claiming it did not have a duty to defend Johnson-Downs as an additional insured under Art's insurance policy. Pekin argued that an additional insured is only covered for vicarious liability claims and that the underlying complaint lacked such allegations. Johnson-Downs filed a motion to stay the action pending the resolution of the underlying case, which the circuit court granted.

¶ 27     The *Pekin Insurance* court concluded that the circuit court abused its discretion when it granted the motion to stay, finding the circuit court could have determined whether the complaint contained any allegations of vicarious liability that Pekin had a duty to defend by comparing the underlying complaint to the language in the insurance policy. 2017 IL App (3d) 160601, ¶ 13. "This can be decided without examining the extent of Johnson-Downs's supervisory control over Art's alleged negligent acts and, ultimately, determining whether Johnson-Downs is in fact vicariously liable." *Id.*

¶ 28     The scenario from *Pekin Insurance* does not present itself here. *Pekin Insurance* is distinguishable because in this case, the circuit court cannot simply compare the allegations in the underlying tort complaint to the language in the policy to determine whether the Board is an additional insured requiring coverage.

¶ 29     Westfield seeks to avoid the liability issue of its own insured by framing its declaratory judgment action under the guise of refusing indemnity for a workers' compensation claim. TFM's contract with the Board provides otherwise and required that TFM procure an insurance policy "for all operations under this Contract," in which TFM agreed to "defend, indemnify and hold harmless the Board [and its employees]" against *all liabilities, losses, penalties, damages and*

*expenses*, including costs \*\*\* arising out of all claims, liens, damages, obligations, actions, suits, judgments or settlements, or causes of action, of every kind, nature and character arising or alleged to arise out of *the negligent or willful acts or omissions of* [TFM] \*\*\* in the performance of this Contract." (Emphasis added.) Further, Westfield's insurance policy specifically defines an additional insured as "any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured." Under the policy, the organization is considered to be an additional insured with respect to "bodily injury" caused, in whole or in part by (1) "Your acts or omissions"; or (2) "The acts or omissions of those acting on your behalf."

¶ 30     We reject Westfield's attempt to separate the disputed facts from the underlying tort case and conflate them with the pending workers' compensation case. This is not an example of a case where the circuit court can simply rule upon the coverage issues as a matter of law because the underlying disputed facts concerning TFM's potential liability intertwine with whether the Board qualifies as an additional insured under the Westfield CGL policy. In short, but for TFM's alleged negligent conduct, the Board would not have been named as a party to the Delmonico workers' compensation case.

¶ 31     We find that the determination of whether TFM's acts or omissions caused the injuries to Delmonico are disputed material facts that affect the analysis of whether the Board is an "additional insured" under the Westfield CGL policy. Therefore, we conclude the circuit court did not abuse its discretion when it entered the order staying Westfield's declaratory judgment action pending the resolution of the Delmonico tort lawsuit. The circuit court soundly exercised its discretion because the underlying proceeding "has the potential of being completely dispositive." *Khan*, 2012 IL App (4th) 120359, ¶ 60.

¶ 32 Further, "[a]n insurer has a duty of fairness to its insureds and may not put its own interest ahead of the protection of its insureds." *RLI Insurance Co. v. Illinois National Insurance Co.*, 335 Ill. App. 3d 633, 647 (2002). In addition to the duty to defend, "[a]n insurer owes its insureds a duty of fair dealing and has no right to manipulate an action in order to excuse itself from protecting its insureds." *RLI Insurance*, 335 Ill. App. 3d at 647. "The declaratory judgment procedure was designed to settle and fix rights before there has been an irrevocable change in the position of the parties that will jeopardize their respective claims of right." *First of America Bank, Rockford, N.A. v. Netsch*, 166 Ill. 2d 165, 174 (1995). However, "[a] declaratory judgment action should not be used to force the parties to have a 'dress rehearsal' of an important issue expected to be tried in the injury suit." *Certain Underwriters at Lloyd's London v. Boeing Co.*, 385 Ill. App. 3d 23, 46 (2008). Here, contrary to Westfield's argument, the declaratory judgment action would necessarily require a determination of whether TFM's acts or omissions caused injury to Delmonico in order to resolve the outstanding coverage issues. Accordingly, we affirm the judgment of the circuit court to stay the declaratory judgment action until the resolution of the underlying tort lawsuit, *Delmonico v. Total Facility Maintenance, Inc.*, No. 17 L 7278.

¶ 33                              CONCLUSION

¶ 34 We affirm the judgment of the circuit court of Cook County.

¶ 35 Affirmed.