UNITED STATES FIRE INSURANCE COMPANY, Plaintiff-Appellant and Counterdefendant, v. AETNA LIFE AND CASUALTY *et al.*, Defendants-Appellees and Counterplaintiffs.

First District (6th Division)  No. 1—96—4178

Opinion filed August 29, 1997.—Rehearing denied October 2, 1997.

Cremer, Kopon, Shaughnessy & Spina, of Chicago (Andrew Kopon, Jr., and Douglas V. Bartman, of counsel), for appellant.

Cassiday, Schade & Gloor, of Chicago (John D. Hackett, Jean M. Golden, Jennifer A. Keller, and Carolyn Quinn, of counsel), for appellees.

PRESIDING JUSTICE GREIMAN delivered the opinion of the court:

This appeal concerns consolidated declaratory judgment actions in which two insurance companies dispute which one has the duty to defend in an underlying personal injury action. The trial court entered summary judgment against plaintiff United States Fire Insurance Company (USFI).

On appeal, USFI asserts that it had no duty to defend under the circumstances of this action and, even if a duty to defend existed, defendant Aetna Life & Casualty (Aetna) shares a concurrent duty to defend based on the "other insurance" clauses and endorsements in the two relevant policies.

For all the reasons that follow, we affirm the trial court's orders, finding that USFI had a sole duty to defend.

In brief, an employee of a subcontractor on a construction project sustained injuries. This appeal concerns what insurance coverage is available to the general contractor and the owner of the construction project in the underlying lawsuit filed by the subcontractor's employee.

A construction project was initiated at Argonne National Laboratories (Argonne). Defendant University of Chicago (University) was the designated owner and operator of the Argonne project, and defendant Perini Corporation (Perini) was the general contractor. Gateway Construction Company (Gateway) was a subcontractor on the project, and defendant Howard Startz (Startz) was an employee of Gateway.

Aetna issued an insurance policy to Perini, the general contractor. Perini entered into a subcontract agreement with Gateway.

Pursuant to the subcontract between Gateway and Perini, Gateway, as the subcontractor, had to "procure and maintain in force, on all its operations, insurance in accordance with attached Exhibit B [certificate of insurance], with Contractor [Perini] and Owner [the University] as additional insureds." The subcontract designates the University as the owner and operator of Argonne. Gateway obtained insurance from USFI.

USFI's policy named Gateway as the insured. An endorsement to this policy modified the commercial general liability coverage to include:

"Any person or organization required by written contract to be named as additional insured, and for whom operations are being performed by or on behalf of the named insured.

\* \* \*

Who is an insured (section II) is amended to include as an insured the person or organization shown in the schedule, but only with respect to acts or omissions of the named insured in connection with the named insured's operations at the applicable location designated."

As required by the contract between Gateway and Perini, Gateway also secured a certificate of insurance describing the USFI policy as including Perini and the University as additional insureds:

"Perini Building Co., Inc., The University of Chicago and the United States Government are added as additional insureds for GL [general liability] claims to the extent such claims are caused by the actions/omissions of Gateway Const. Co., Inc. or its employees."

Startz filed a complaint in the circuit court of Cook County alleging that he sustained personal injuries while employed by Gateway and naming Perini, the University and Argonne as defendants (case No. 95 L 02585) (the Startz action). Gateway was not named as a defendant. Startz alleged that he was injured when he tripped on a conduit protruding from a concrete slab while moving rebars. Startz alleged actions under the Structural Work Act (740 ILCS 150/1 *et seq.* (West 1992)) and in negligence.

Perini tendered the defense of the Startz action to Aetna based on the insuring agreement of Aetna that named the University as an additional insured under the policy. In turn, Aetna, Perini, the University and Argonne tendered the defense of the Startz action to USFI based on the provisions for additional insureds under the USFI insurance policy issued to Gateway.

On September 1, 1995, USFI filed a complaint for declaratory judgment (case No. 95 CH 008457). USFI contended that Perini, the University and Argonne are not insureds or additional insureds under USFI's policy; that USFI does not owe a duty to defend or indemnify Perini, the University and Argonne; and that the Startz complaint does not allege any acts or omissions on the part of Gateway regarding the accident involving Startz.

On September 7, 1995, Perini filed a complaint for declaratory judgment (case No. 95 CH 008613). Perini contended that USFI has a duty to defend and indemnify Perini in the Startz lawsuit based upon Perini's status as an additional insured on Gateway's general liability policy. Perini also alleged that USFI must reimburse Perini

for all defense costs Perini incurs in connection with the defense of the Startz action.

On October 25, 1995, the two declaratory judgment actions were consolidated. Thereafter, the parties filed cross-motions for summary judgment.

On January 9, 1996, the trial court granted the motion of defendants (Perini and the University) and denied the cross-motion of USFI. In its order, the trial court also found that USFI "has a duty to defend Perini Corporation and University of Chicago as operator of the Argonne National Laboratories in the *Startz* lawsuit (95 L 2585) as additional insureds under Gateway Construction Company's U. S. Fire Policy No. 541—025524—8." The order further stated that plaintiff's "declaratory judgment action remains pending, along with the counterclaim filed by Perini Corporation." USFI's motion to reconsider was denied on March 7, 1996.

On June 28, 1996, USFI filed a second motion for summary judgment asserting that the "other insurance" clauses in the two insuring agreements by USFI and Aetna require both insurers to share the defense costs of the Startz lawsuit. On the same day (June 28, 1996), Perini and the University filed a motion for summary judgment contending that USFI has the sole primary duty to defend and indemnify them in connection with the Startz litigation and that the Aetna policy is excess over the limits of USFI and does not apply until the limits of USFI's policy are exhausted.

On September 16, 1996, the trial court ruled on these June 1996 cross-motions for summary judgment. The trial court granted summary judgment in favor of Perini and the University and denied the cross-motion of USFI. The trial court found that USFI "has the sole primary duty to defend and indemnify Perini and the University of Chicago as operator of the Argonne National Laboratories in connection with the *Startz* lawsuit (95 L 2585)" and "that Perini's Aetna policy is excess over [USFI's] policy and Aetna does not have any obligation to share defense costs and indemnity with [USFI] and shall not apply in any respect until such time as the limits of [US-FI's] policy have been exhausted." The trial court also found that USFI "must reimburse Aetna for all defense costs Aetna has incurred in connection with the defense of the *Startz* lawsuit (95 L 2585)." USFI filed a petition for rehearing on the matters determined in the order of September 16, 1996.

On October 30, 1996, in response to USFI's petition to vacate or modify the order of September 16, the trial court modified the September 16 order "to eliminate any determination of any duty to indemnify" and specifically reserved "ruling with respect to the issue

of the duty to indemnify." The trial court ruled that the September 16 order "shall only determine the duties to defend of the parties." In addition, the trial court further modified the September 16 order, as amended in this order, "to add that there is no just reason to delay enforcement or appeal."

On appeal, USFI challenges the three trial court orders of January 9, 1996, September 16, 1996, and October 30, 1996. Perini and the University have responded in this appeal and are hereinafter referred to as defendants.

■ As a threshold matter, defendants assert that this court lacks jurisdiction to review the trial court's order of January 9, 1996, and argue that the order was purely interlocutory. Thus, according to defendants, this court cannot consider the issue adjudicated in that order, *i.e.*, USFI has a duty to defend.

Defendants' argument is misplaced. There is no dispute that the subsequent orders (September 16, 1996, and October 30, 1996) are appealable and that USFI specified all three orders (January 9, September 16, and October 30) in its notice of appeal. "[A]n appeal from a final judgment draws into issue all prior nonfinal orders which produced the final judgment." *Dowell v. Bitner*, 273 Ill. App. 3d 681, 688 (1995). Even where an order is not specified in a notice of appeal, such order is subject to review "where that order was a step in the procedural progression to the specified order." *Dowell*, 273 Ill. App. 3d at 688-89, citing *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 435 (1979). The issue of USFI's duty to defend is an integral and interrelated matter addressed in the two subsequent orders, and we have jurisdiction to hear all matters raised in this appeal. See *Waters v. Reingold*, 278 Ill. App. 3d 647, 651-58 (1996). Moreover, in our review of a summary judgment order, we must consider all the facts, circumstances and law related to the case. *Emerson Electric Co. v. Aetna Casualty & Surety Co.*, 281 Ill. App. 3d 1080, 1083 (1996). Accordingly, we have jurisdiction to consider the January 9, 1996, order.

First, USFI asserts that it has no duty to defend defendants in the Startz action based on the plain language in the endorsement and the allegations in the Startz complaint. USFI argues that, under the explicit terms of the endorsement, defendants are additional insureds *only* where the claim arises out of Gateway's operations and Gateway's acts or omissions and the Startz complaint is bereft of any facts at all relating to Gateway's acts, omissions or operations.

Defendants contend that the facts asserted in the Startz action raise, at a minimum, the potential that Gateway's acts or omissions caused Startz's injuries, thus triggering, as a matter of law, USFI's broad duty to defend additional insureds under the USFI policy.

■ Our review of rulings on a motion for summary judgment is *de novo. Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Outboard Marine*, 154 Ill. 2d at 102.

■ The principles of insurance construction are well established. The extent of an insurer's duty to defend is determined by a comparison of the terms of the insurance policy and the allegations of the underlying complaint. *Lapham-Hickey Steel Corp. v. Protection Mutual Insurance Co.*, 166 Ill. 2d 520, 532 (1995), citing *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 72 (1991). "If the facts alleged in the underlying complaint fall within or even *potentially* within policy coverage, the insurer has a duty to defend its insured against the complaint." (Emphasis added.) *Lapham-Hickey*, 166 Ill. 2d at 532 (without a complaint, there is no suit to defend); *National Union Fire Insurance Co. v. Glenview Park District*, 158 Ill. 2d 116 (1994) (insurer has a duty to defend the additional insured).

■ The law accords the insured most favorable and liberal construction of exclusionary insurance provisions and the underlying complaint. Insurance "provisions that limit or exclude coverage are to be construed liberally in favor of the insured and 'most strongly against the insurer.'" *Glenview Park District*, 158 Ill. 2d at 122, quoting *Squire v. Economy Fire & Casualty Co.*, 69 Ill. 2d 167, 179 (1977). "Moreover, the complaint must be liberally construed, and all doubts resolved in favor of the insured." *Casualty Insurance Co. v. Northbrook Property & Casualty Insurance Co.*, 150 Ill. App. 3d 472, 475 (1986). "The insurer is required to defend any claim under the pleadings which might *possibly* fall within the scope of the policy coverage." (Emphasis added.) *Casualty Insurance Co.*, 150 Ill. App. 3d at 475.

Two cases to which defendants direct our attention are particularly instructive and persuasive in supporting a duty to defend on the part of USFI, the subcontractor's insurer in the present case: *J.A. Jones Construction Co. v. Hartford Fire Insurance Co.*, 269 Ill. App. 3d 148 (1995), and *Glenview Park District*, 158 Ill. 2d 116.

In *J.A. Jones*, plaintiff J.A. Jones Construction Company was the general contractor for a construction project and Jones entered into a subcontract with PPG Industries, Inc. Defendant Hartford Fire Insurance Company provided insurance to the subcontractor, and the insurance policy named the general contractor as an additional insured. One of the subcontractor's employees (John McGovern) was injured while working at the construction site and sued the general

contractor for negligence. In his complaint, the injured employee did NOT allege that the subcontractor was negligent. The subcontractor's insurer (Hartford) was held to have a duty to defend in the lawsuit filed by the subcontractor's employee even though the complaint did not allege that the subcontractor was negligent. The additional insured endorsement provided:

"WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization with whom you have agreed, because of a written contract or agreement, to provide insurance such as is afforded under this policy, *but only with respect to your operations, 'your work' or facilities* owned or used by you." (Emphasis added.) *J.A. Jones,* 269 Ill. App. 3d at 150.

This court rejected the argument by the subcontractor's insurer that the endorsement limited coverage to injuries attributable to the subcontractor's negligence. This court noted that there was no dispute that the subcontractor's employee, when injured, was an employee of the subcontractor performing work the subcontractor had contracted to do. *J.A. Jones,* 269 Ill. App. 3d at 150.

In *Glenview Park District,* the supreme court addressed an exclusion in an insurance endorsement for " 'damages arising out of the negligence' of the additional insured" and held that the insurer had a duty to defend. *Glenview,* 158 Ill. 2d at 118. Glenview Park District (Glenview) entered into a contract with National Decorating Services (NDS) for NDS to paint portions of an ice center. NDS had a policy with the plaintiff insurer (National Fire Insurance). The policy included Glenview as an additional insured and an endorsement that excluded coverage for "damages arising out of negligence of the Additional Insured [Glenview]." An employee of NDS was injured on the job and filed a complaint against Glenview under both the Structural Work Act and common law negligence. The insurer refused to defend Glenview in the injured worker's action based on the exclusion in the endorsement. The supreme court found that the term "negligence" in the exclusion clause did not encompass actions based on alleged violations of the Structural Work Act and, therefore, the insurer of NDS had a duty to defend the additional insured, Glenview, with respect to the allegations of Structural Work Act violations. In turn, the supreme court held that since the insurer had a duty to defend Glenview for the Structural Work Act claim, the insurer also became obligated to defend Glenview on the remaining counts of the underlying complaint. The supreme court observed that "exclusionary provisions such as that found in the instant cause are to be construed narrowly rather than broadly." *Glenview Park District,* 158 Ill. 2d at 123.

USFI directs our attention to three distinguishable cases: *Consolidation Coal Co. v. Liberty Mutual Insurance Co.*, 406 F. Supp. 1292 (W.D. Pa. 1976), *Casualty Insurance Co. v. Northbrook Property & Casualty Insurance Co.*, 150 Ill. App. 3d 472 (1986), and *Village of Hoffman Estates v. Cincinnati Insurance Co.*, 283 Ill. App. 3d 1011 (1996). All three cases are unpersuasive.

In 1986, a federal district court in Pennsylvania concluded that the phrase "but only with respect to the acts or omissions" used in an endorsement was ambiguous. *Consolidation Coal*, 406 F. Supp. at 1295. Employing the rules of contract construction and analogizing to prior case law, the federal court determined that "[i]t is reasonable to conclude that the most appropriate construction of the subject phrase is that Consolidation [the shipper] was to be an additional insured under the [named insured's (the carrier's)] policy only when the negligent acts or omissions of [the carrier] directly caused [the shipper's] loss." *Consolidation Coal*, 406 F. Supp. at 1299. From this interpretation, the court found that the shipper (a coal company), which had been named as an additional insured on a policy issued to a carrier (a trucking company), was not entitled to coverage under the carrier's policy in a lawsuit filed by an employee of the carrier who was injured and sustained damages when his truck was struck by a railroad car owned by the shipper. The court construed the endorsement to provide that the shipper was to be an additional insured under the carrier's policy only when the negligent acts or omissions of the carrier directly caused the shipper's loss.

■ Contrary to the finding in *Consolidation Coal*, as conceded by USFI, Illinois law holds that the phrase "acts or omissions" is not ambiguous. *Hoffman Estates*, 283 Ill. App. 3d 1011; see *Kaspar v. Clinton-Jackson Corp.*, 118 Ill. App. 2d 364 (1969). Accordingly, since the phrase is devoid of any ambiguity, we must apply its plain and ordinary meaning. Furthermore, a federal district court in Pennsylvania recently criticized *Consolidation Coal*, in *Maryland Casualty Co. v. Regis Insurance Co.*, No. 96—CV—1790 (E.D. Dist. Pa. April 4, 1997), because (1) it relied on indemnity, not duty to defend, cases to interpret "act or omission"; (2) the plain and ordinary meaning of "act or omission" is *not* "negligence" and yet the court in *Consolidation Coal* inserted the word "negligent" into the policy language; and (3) other cases have interpreted identical language and did not find that such language limited coverage.

The remaining two cases on which USFI relies are easily distinguishable. The *Casualty Insurance Co.* decision found *Consolidation Coal* inapplicable (*Casualty Insurance Co.*, 150 Ill. App. 3d at 476) and the decision in *Hoffman Estates* rested on substantially different

language (*Hoffman Estates*, 283 Ill. App. 3d at 1014 (based on the term "solely" in the endorsement, the insurer had no duty to defend)).

In the present case, USFI's policy named Gateway as the insured. In an endorsement to this policy, defendants were additional insureds "but only with respect to *acts or omissions of the named insured* [Gateway] in connection with the named insured's operations at the applicable location designated [Argonne]." (Emphasis added.)

Startz was injured at the Argonne jobsite when he tripped on conduit protruding from a concrete slab. The Startz complaint alleges causes of action under the Structural Work Act and common law negligence. Gateway was not named as a defendant. However, the complaint alleges that, at the time of the accident: (1) Startz "was employed by Gateway" on the Argonne premises in the furtherance of the Argonne project; (2) "the duties and responsibilities of [Startz] required that he work on and about the aforesaid conduit protruding from [a] concrete slab"; and (3) Startz "was working on and about the aforesaid conduit protruding from [a] concrete slab when [he] tripped on conduit protruding from [the] concrete slab. while moving re-bars [*sic*], thereby proximately causing injuries to [him]."

■ A comparison of the allegations in the complaint and the endorsement raises the potential for coverage and, in turn, a potential for coverage is all that is necessary to trigger USFI's duty to defend. When injured, Startz was an employee of Gateway (the named insured), was performing tasks required of him ("in connection with the named insured's operations"), and was working at the Argonne construction project ("at the applicable location designated"). Defendants' alleged liability to Startz potentially could have arisen from an act or omission on the part of Gateway, whether or not the act or omission rises to the level of negligence. Such a possibility is sufficient to trigger the duty to defend on the part of Gateway's insurer (USFI) under the additional insured endorsement.

Second, USFI asserts that both it and Aetna, the insurer of the general contractor, Perini, are primary insurers and together they have a concurrent duty to defend based on the "other insurance" clauses of the two policies. USFI maintains that Aetna's excess endorsement is not applicable because the USFI policy is not "valid and collectible." USFI argues (1) that its policy is not "valid and collectible" unless and until it is determined that defendants are actually (not just potentially) additional insureds; (2) that the "acts or omissions" language serves as an exclusion to render USFI's policy uncollectible; and (3) because indemnity may not be available from USFI for liabilities incurred by defendants in the Startz action and

to apply Aetna's excess clause in the first place, USFI's policy must be found to be valid and collectible. Under this reasoning, USFI urges that Aetna's excess endorsement should be read out of the policy and, thus, both Aetna and USFI are primary policies with identical "other insurance" clauses.

Defendants contend USFI reads the operative policy provisions incorrectly. First, defendants maintain that Aetna's special amendatory endorsement in the Aetna policy renders coverage by Aetna excess only, over and above the USFI policy for purposes of the Startz lawsuit. Second, defendants maintain that USFI's policy constitutes a policy of "valid and collectible" insurance because the potential for indemnification is still very much a possibility in this case and the fact that the allegations of the Startz complaint fall potentially within the scope of the USFI policy is sufficient, in and of itself, to force USFI to shoulder both the sole, primary responsibility to defend and to pay for that defense. We agree with defendants.

Aetna's, but not USFI's, policy includes the following amendatory endorsement prefaced by the declaration "this endorsement changes the policy:"

"It is agreed that the insurance afforded by this policy is excess of coverage afforded to the insured under valid and collectible policies purchased by other organizations, to which the insured on this policy has been added as an additional insured."

USFI's argument regarding "valid and collectible" as to this excess endorsement was rejected in *Northbrook Property & Casualty Insurance Co. v. United States Fidelity & Guaranty Co.*, 150 Ill. App. 3d 479 (1986). In *Northbrook Property*, USF&G issued an insurance policy to two subcontractors (Mid-American and Mayfair), including an additional insured endorsement for the construction manager (Schal). Northbrook issued an insurance policy to the construction manager, including an excess endorsement. Two lawsuits were later filed by two employees of the subcontractors. USF&G argued that Northbrook had an equal or concurrent obligation to defend the construction manager in the defense of the underlying lawsuits. The court stated as follows:

"USF&G argues that the words 'other valid and collectible insurance' in Northbrook's excess endorsement renders [*sic*] the determination of whether Northbrook's policy is excess 'premature' because, until judgment is rendered in the underlying actions, it cannot be determined whether the policies issued by USF&G are 'valid and collectible.' We disagree.

*** The terms 'valid and collectible' are directed to an insurance policy which is legal and valid, as distinguished from one which was procured by fraud or cannot be collected due to insolvency of the company. [Citations.]

The date of the accident is the relevant date to consider in determining whether a policy is 'valid and collectible' for purposes of establishing an insurer's duty to defend. The date judgment is entered in the underlying suit, although it may impact on the determination of an insurer's duty to *indemnify*, is irrelevant to the inquiry as to the duty to *defend*." (Emphasis in original.) *Northbrook Property*, 150 Ill. App. 3d at 483.

Thus, USF&G had the primary, sole duty to defend. Likewise, we reject USFI's argument and hold that USFI had a primary, sole duty to defend.

USFI's reliance on the decision in *Home Insurance Co. v. Liberty Mutual Insurance Co.*, 266 Ill. App. 3d 1049 (1994), is misplaced. This court in *Home Insurance* had to determine whether a certain endorsement was an escape clause or excess clause. *Home Insurance*, 266 Ill. App. 3d at 1052 ("[t]he principal argument *** [is] whether endorsement 21 is an 'escape' clause or 'excess' clause"). After noting the difference between the two types of clauses, this court found the relevant provision to be an escape, not an excess, clause. Based on the holding that the subject provision operated as an escape clause, the two insurers were both primary carriers. In contrast, the operative amendatory endorsement in the present case is clearly an excess provision.

The terms of the policies at issue and the law are straightforward. Defendants were included as additional insureds in USFI's policy, albeit under the restrictions stated in the "acts or omissions" clause. Where defendants were added as an additional insured under other valid and collectible policies, Aetna's policy provided excess coverage pursuant to its amendatory endorsement. For purposes of the duty to defend, the terms "valid and collectible" concern the legality and validity of an insurance policy, not the ultimate judgment rendered in the underlying actions at some future, unknown date. *Northbrook Property*, 150 Ill. App. 3d at 483. " '[W]hen one policy is primary and the other is excess, only the primary insurer need defend claims below the limits of the primary policy.' " *Home Insurance*, 266 Ill. App. 3d at 1056, quoting *Western Casualty & Surety Co. v. Western World Insurance Co.*, 769 F.2d 381, 385 (7th Cir. 1985).

For all the foregoing reasons, we affirm the trial court's orders,

finding that USFI had a duty to defend and that USFI had the sole, primary duty to defend in the Startz action.

Affirmed.

ZWICK and QUINN, JJ., concur.