# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 03-1708

GREAT WEST CASUALTY COMPANY,

*Plaintiff-Appellee,*

v.

CRYSTAL MAYORGA,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 02-C-50261—**Philip G. Reinhard**, *Judge.*

ARGUED AUGUST 6, 2003—DECIDED SEPTEMBER 8, 2003

Before BAUER, POSNER, and KANNE, *Circuit Judges.*

POSNER, *Circuit Judge.* The district court granted summary judgment for the insurer in this diversity lawsuit, which pivots on the coverage of the policy. It had been issued to a truck company, and covered liability arising from the company's ownership, maintenance, or use of vehicles, excluding however a private passenger vehicle or a pickup truck with a load capacity under three-quarters of a ton. Jeffrey Bushman, the grandson of the truck company's owner, was driving such a pickup truck, owned by the company, to school when he collided with a car driven by Crystal Mayorga. She was injured and sued both the truck company and Bushman; we do not know the

status of that suit. The insurer brought the present suit against its insured (the truck company) and Mayorga, seeking a declaration of noncoverage. Under Illinois law, the tort claimant is a necessary party to a suit to determine coverage. *Zurich Ins. Co. v. Baxter Int'l, Inc.*, 670 N.E.2d 664, 668-69 (Ill. 1996); *Thoele v. Aetna Casualty & Surety*, 39 F.3d 724, 726 (7th Cir. 1994). The truck company has not appealed, but Mayorga has; her practical interest in the truck company's insurance status gives her standing to do so. *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 681-82 (7th Cir. 1992).

Mayorga's only argument on appeal is that two endorsements added to the insurance policy after it was issued but before the accident occurred expanded the policy's coverage to pickup trucks of any load capacity. For reasons the record does not reveal, a building contractor and the State of Pennsylvania were added as additional insureds by the endorsements. Each endorsement provides that "coverage provided by this endorsement applies to 'auto(s)' described in the SCHEDULE on this endorsement," and the schedule offers the following "Description of Covered 'Auto(s)': Applies to all trucks, tractors & trailers owned, leased, hired, rented, or borrowed which are used by the name insured." There is no exception for pickup trucks of limited load capacity, and Mayorga argues therefore that the endorsements broadened the coverage of the original policy.

It is true that the endorsements modified the policy; and the insurer's lawyer concedes, though perhaps imprudently, that the insureds added by the endorsements obtained by virtue of the language that we have quoted broader coverage than the original insured had. No reason is suggested *why* the additional insureds would want broader coverage (narrower would be more likely, as in

*Nat'l Union Fire Ins. Co. v. Glenview Park District*, 632 N.E.2d 1039, 1042 (Ill. 1994), and *United States Fire Ins. Co. v. Aetna Life & Casualty*, 684 N.E.2d 956, 1000-02 (Ill. App. 1997)); the lawyers could not even tell us what connection the endorsees had with the truck company. But the insurer insists that the endorsements did not broaden that company's—the original insured's—coverage.

That is surely correct. The truck company would have had to pay an additional premium for additional coverage. And it is apparent that the purpose of the endorsements was to add insureds rather than to alter the contract with the original insured. Each endorsement is captioned "Additional Insured Endorsement" and states that "who is an insured is changed to include as an 'insured' the person or organization shown in the SCHEDULE on this endorsement only if they are liable for the conduct of an 'insured' shown in the Who is an insured provisions [i.e., the truck company] and *only to the extent of that liability*" (emphasis added). This language is the reason for our suggesting that the insurer's lawyer may have been imprudent to concede that the endorsements gave the endorsees broader coverage than the original insured had.

Mayorga does not so much deny the unreasonableness of her interpretation as insist that reasonableness plays no role in the interpretation of an insurance contract. She is wrong. What is right is that insurance contracts are interpreted in doubtful cases in favor of the insured, e.g., *Nat'l Union Fire Ins. Co. v. Glenview Park District*, *supra*, 632 N.E.2d at 1042; *United States Fire Ins. Co. v. Aetna Life & Casualty Co.*, *supra*, 684 N.E.2d at 997, because they are drafted by the insurers, because their typical wording even when clear to experts is often opaque to insureds (especially when the insured is an individual, rather than a company as in this case), and because insureds want

insurance against the vagaries of interpretation. The application of the principle may seem doubtful in this case, since the insured (besides being a company rather than a hapless individual) is not a party to the appeal; but it was a party in the district court and so would be bound by the interpretation that we adopt. *Williams v. Madison County Mutual Automobile Ins. Co.*, 240 N.E.2d 602, 604 (Ill. 1968). In any event an interpretation of an insurance policy is not rendered doubtful, bringing the interpretive principle that Mayorga invokes into play, just because a snippet of contractual language taken out of context provides literal support to the insured's position. That way madness lies. Suppose you order a Cosmopolitan in a bar, and the bartender gives you a copy of the woman's magazine and insists that you pay for it; can he appeal to literal meaning to defeat your contention that it is not what you agreed to? Mayorga cites no cases in support of her interpretation, and, not surprisingly, we can find none ourselves.

AFFIRMED.

A true Copy:

　　　Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*