In the

# United States Court of Appeals
## For the Seventh Circuit

_____

Nos. 16-2321 & 16-2586

1000 FRIENDS OF WISCONSIN INCORPORATED,

*Plaintiff-Appellee*,

*v.*

UNITED STATES DEPARTMENT OF TRANSPORTATION, *et al*.,

*Defendants*.

Appeals of:

WISCONSIN DEPARTMENT OF TRANSPORTATION and DAVE ROSS

_____

Appeals from the United States District Court
for the Eastern District of Wisconsin.
No. 11-C-0545 — **Lynn Adelman**, *Judge*.

_____

ARGUED NOVEMBER 7, 2016 — DECIDED JUNE 19, 2017

_____

Before EASTERBROOK and WILLIAMS, *Circuit Judges*, and FEINERMAN, *District Judge*.[*]

_____

[*] Of the Northern District of Illinois, sitting by designation.

EASTERBROOK, *Circuit Judge*. Because the State of Wisconsin proposed to use federal highway funds to widen Wisconsin Route 23 to four lanes between Fond du Lac and Sheboygan, the U.S. Department of Transportation (USDOT) issued an environmental impact statement evaluating the potential effects of the project. After USDOT made a "record of decision" permitting the use of federal funds, a group opposed to the project filed this suit under the Administrative Procedure Act and asked the district court to find the statement inadequate and enjoin the project. The court denied the request for an injunction—after all, Wisconsin can proceed using its own money whether or not a federal agency has satisfied the requirements for a federal contribution—but set aside the record of decision after concluding that the portion of the statement projecting traffic loads in 2035 had not adequately disclosed all assumptions and other ingredients of the traffic-forecasting model. 2015 U.S. Dist. LEXIS 67176 (E.D. Wis. May 22, 2015).

USDOT then issued a revised environmental impact statement with additional details about how the traffic estimates had been generated. The district court concluded, however, that even as revised the information remains inadequate and reiterated the order vacating USDOT's record of decision. 2016 U.S. Dist. LEXIS 57413 (E.D. Wis. Apr. 29, 2016). The judge stated that plaintiff is entitled to a declaratory judgment but neglected to issue one. We do not see what sort of declaratory relief would be appropriate, however, for the central question in the case was resolved by the order setting aside the record of decision. That order is a final decision appealable under 28 U.S.C. §1291, and it has been appealed.

But the only appellants are the Wisconsin Department of Transportation and a state employee (collectively Wisconsin). So we have a mismatch between the relief and the appellant. The only relief is directed against USDOT, which has not appealed. The only appellants remain free to continue the highway project, though on the state's dime.

The briefs filed in this court ignored the fact that USDOT has not filed a notice of appeal. For its part, USDOT ignored the state's appeal and did not file papers of any kind, even though every party that is not an appellant becomes an appellee. After oral argument we issued an order directing all parties, including USDOT, to file supplemental memoranda to discuss the significance of the fact that USDOT elected not to appeal.

USDOT maintains that its decision not to appeal forecloses any other challenge to the district court's decision, and we agree. The only relief ordered by the district court is the cancellation of USDOT's record of decision, the document that allows federal funding of this project. That was the only possible relief, because the National Environmental Policy Act, on which the suit rests, applies only to the national government. The critical language provides: "all agencies of the Federal Government shall … include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on" environmental effects. 42 U.S.C. §4332(2)(C). This statute does not impose any duties on states, which is why Wisconsin remains free to widen the highway using its own resources.

Because the federal agency has not appealed, it cannot distribute funds to Wisconsin for the Route 23 project until it issues a new environmental impact statement. Wisconsin cannot seek relief against a judgment that does not bind it. It would be nothing but an advisory opinion for a court of appeals to discuss the adequacy of this environmental impact statement, when that discussion cannot change the effect of the district court's judgment. This is why decision after decision, by the Supreme Court and this circuit, holds that, when the public agency with duties under a judgment elects not to appeal, a different litigant cannot step into the agency's shoes and carry on. See, e.g., *Hollingsworth v. Perry*, 133 S. Ct. 2652 (2013); *Diamond v. Charles*, 476 U.S. 54 (1986); *Princeton University v. Schmid*, 455 U.S. 100 (1982); *Kendall-Jackson Winery, Ltd. v. Branson*, 212 F.3d 995 (7th Cir. 2000).

We suggested in *Kendall-Jackson* that there might be an exception to this principle if the decision not to appeal could itself be the subject of judicial review. Suppose an agency had a statutory duty to appeal but failed to live up to its legal obligations. Or suppose that USDOT had a statutory duty to pay for state highway projects on request and to do whatever it took (including litigation) to provide those funds. Then a court of appeals might be able to proceed in two steps: review the agency's decision not to appeal, and if that decision was arbitrary and capricious proceed to the merits. But Wisconsin does not contend that USDOT has a statutory duty to fund the Route 23 project, to prepare a better environmental impact statement, or to appeal an adverse decision. If USDOT had said something like "we will not fund this project because we do not think the traffic projection sufficiently reliable," Wisconsin would not have had

any legal redress. But that's essentially what USDOT did conclude when deciding not to appeal.

Wisconsin insists that it has standing because it is a "lead agency" and cooperated with USDOT to produce and defend the environmental impact statement. See 23 U.S.C. §139; 23 C.F.R. §771.109(c)(1). But the question is not whether the state suffers insult from the district court's evaluation of its handiwork or injury from the judgment—it does, because the district court's judgment costs it a lot of money (unless USDOT comes up with a new environmental impact statement). The question is whether that injury is redressable on appeal.

Standing has three components: injury, causation, and redressability. See, e.g., *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Having chosen not to appeal, USDOT remains bound by the judgment no matter what happens in this court. A timely appeal in civil litigation is a jurisdictional requirement. *Bowles v. Russell*, 551 U.S. 205 (2007). A court of appeals cannot modify a judgment to make it more favorable to a party that did not file a notice of appeal. See, e.g., *Greenlaw v. United States*, 554 U.S. 237 (2008). This court therefore lacks authority to disturb the order against USDOT whether or not we are persuaded by the state's arguments. As long as USDOT remains bound, nothing this court says could unlock the federal Treasury for the Route 23 project. Wisconsin suffers a concrete injury, caused by the district court's decision, but that injury is not redressable in this appeal.

The appeals are dismissed for lack of a justiciable controversy.

FEINERMAN, *District Judge*, dissenting.

The court holds that Wisconsin satisfies two components of standing, injury and causation, but not the third, redressability. According to the court, because the United States Department of Transportation (USDOT) did not appeal the district court's judgment vacating the record of decision, it remains bound by the judgment. From that premise, the court concludes that the injury the judgment inflicts on Wisconsin—which the court describes as the loss of federal funds for a state highway project—could not be redressed by our reversing the judgment.

That conclusion, in my view, is incorrect. "Redressability 'examines the causal connection between the alleged injury and the judicial relief requested.'" *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 422 F.3d 490, 501 (7th Cir. 2005) (quoting *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984)). Wisconsin cannot obtain federal funding for—or, as will be explained, even proceed with—its highway project without a record of decision that includes an environmental impact statement prepared in compliance with the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 *et seq.* See 23 U.S.C. § 139(n)(2); 42 U.S.C. § 4332(C). The district court held that the environmental impact statement (and thus the record of decision) associated with the project violated NEPA. If we reverse the judgment—meaning if we hold that the record of decision complied with NEPA—Wisconsin once again will be eligible to receive federal funding for and proceed with the project. Such a reversal quite plainly would redress the injury Wisconsin sustained from the judgment. See *In re Navigant Consulting, Inc., Sec. Litig.*, 275 F.3d 616, 620 (7th Cir. 2001) ("Class members suffer inju-

ry in fact if a faulty settlement is approved, and that injury may be redressed if the court of appeals reverses. What more is needed for standing?"), vacated on other grounds, 536 U.S. 920 (2002). It follows that Wisconsin's appeal satisfies the redressability component of standing.

The court holds otherwise on the strength of four precedents: *Hollingsworth v. Perry*, 133 S. Ct. 2652 (2013); *Diamond v. Charles*, 476 U.S. 54 (1986); *Princeton Univ. v. Schmid*, 455 U.S. 100 (1982); and *Kendall-Jackson Winery, Ltd. v. Branson*, 212 F.3d 995 (7th Cir. 2000). The court describes those decisions as holding "that, when the public agency with duties under a judgment elects not to appeal, a different litigant cannot step into the agency's shoes and carry on." *Ante*, at 4.

That description does not accurately capture *Princeton University*, which concerned the New Jersey Supreme Court's reversal on state constitutional grounds of a criminal trespass conviction premised on the defendant's violating a university regulation governing access to campus. 455 U.S. at 101. Princeton sought review, arguing that the ruling violated *its* federal constitutional rights. *Id*. at 101-02. New Jersey joined Princeton's challenge but declined to take a position on the merits. *Id*. at 102.

In considering jurisdiction, the Supreme Court first held that because the State had not taken a position on the merits, its presence did not give rise to an Article III case or controversy. *Ibid*. The Court then held that Princeton itself had no standing because it had amended the regulation underlying the trespass conviction. *Id*. at 103. The Court explained that because the state supreme court's judgment "does not prevent [Princeton] from having the validity of its new regulation ruled upon in another enforcement action, the Universi-

ty is without standing to invoke our jurisdiction." *Ibid*. It thus was Princeton's own conduct, not the State's litigation strategy, that deprived it of appellate standing. The necessary implication is that had Princeton not amended the regulation, it would have had standing. See *Federation of Advertising Industry Representatives, Inc. v. City of Chicago*, 326 F.3d 924, 930 (7th Cir. 2003) (describing *Princeton University* as illustrating the "general rule that repeal, expiration, or significant amendment to challenged legislation ends the ongoing controversy and renders moot a plaintiff's request for injunctive relief"). Indeed, the fact that the Supreme Court analyzed Princeton's standing separately from the State's demonstrates that the State's declining to take a position on the merits did not, by itself, foreclose Princeton's standing.

Nor does the court's description adequately capture *Diamond* and *Hollingsworth*, as neither turned on redressability. The appellant in *Diamond*, a physician, sought to challenge in the Supreme Court our invalidation of an Illinois abortion law, while Illinois itself chose not to. 476 U.S. at 60-61. (The physician was an appellant, not a petitioner, because the Supreme Court at the time had appellate jurisdiction over court of appeals decisions invalidating a state statute. See 28 U.S.C. § 1254(2) (1982).) The Court held that the physician lacked standing to pursue the appeal, not on redressability grounds, but because he had not suffered injury in fact. *Diamond*, 476 U.S. at 65-67. As the Court explained, "a desire that the Illinois Abortion Law as written be obeyed" is not the kind of interest that Article III recognizes as sufficient for standing. *Id.* at 66. *Hollingsworth*, in which supporters of a California law unsuccessfully sought to challenge its invalidation by the Ninth Circuit on federal constitutional grounds after California itself declined to do so, also turned

on injury in fact, not redressability. 133 S. Ct. at 2662 ("Here, … petitioners had no 'direct stake' in the outcome of their appeal. Their only interest in having the District Court order reversed was to vindicate the constitutional validity of a generally applicable California law.").

As for *Kendall-Jackson*, the court's description of its holding—"when the public agency with duties under a judgment elects not to appeal, a different litigant cannot step into the agency's shoes and carry on," *ante*, at 4—is correct as far as it goes. Liquor suppliers injured by a state law sued the state liquor commissioners responsible for enforcing the law and certain liquor distributors the law favored; the district court entered a preliminary injunction against the commissioners, prohibiting them from enforcing the law, but entered no relief against the distributors; and the distributors, but not the commissioners, appealed. 212 F.3d at 995-97. We dismissed the appeal, holding that the distributors lacked standing: "Because the Commission has not appealed, it remains bound by the injunctions no matter what happens on the distributors' appeals, so it is not clear what point the distributors' appeals can serve." *Id*. at 997. "The critical question," we observed, "[wa]s this: when a district judge enters an order creating obligations only for Defendant A, may the court of appeals alter the judgment on appeal by Defendant B when obligations imposed on A indirectly affect B?" *Id*. at 998. As we explained, the answer to that question is no, and the reason lies in redressability: "Sure the injunction injures [the distributors], but how can their appeal redress that injury given that the injunction will continue to bind the Commission?" *Ibid*.

*Kendall-Jackson* is good law, but two fundamental matters distinguish it from this case. The first concerns the nature of the judgment from which the appeal was taken, and the second concerns the identity of the appellant.

As for the nature of the judgment, the district court in *Kendall-Jackson* enjoined state officials from enforcing a state law. Because the liquor commissioners, having not appealed, would remain bound by the injunction regardless of the outcome of the distributors' appeal, we held that the appeal could not redress the distributors' injury. But the district court here entered no injunction. Rather, the court declared that the record of decision violated NEPA, vacated it, and expressly declined to issue an injunction. This is the full text of the order:

> IT IS ORDERED AND ADJUDGED that the plaintiff has prevailed on its claim for declaratory relief under NEPA, that the March 17, 2014 record of decision is vacated, and that the plaintiff's remaining claims, including its claims for injunctive relief, are moot.

Although the order might have included more detail, the nature of the relief granted is plain. The complaint sought declaratory relief against not only USDOT, but also Wisconsin (actually, against the Wisconsin Department of Transportation (WisDOT) and its secretary, Dave Ross). It asked the court to "[d]eclar[e] that the Federal Defendants and [Wisconsin] have failed to comply with … NEPA … by failing to prepare an adequate [environmental impact statement]." The district court granted that relief, which means that it entered judgment against both USDOT *and* Wisconsin.

As Wisconsin tells us in its post-argument brief, it planned to rely on the record of decision not just to obtain USDOT funds for the highway project, but also to acquire permits required by the Clean Air Act, wetlands permits from the Army Corps of Engineers, and approvals from the National Park Service. See 23 U.S.C. § 139(d)(8)(A) ("all Federal permits and reviews … shall rely on a single environmental document"). It therefore is incorrect for the court to say—without addressing, let alone refuting, Wisconsin's submission—that the district court's judgment leaves Wisconsin "free to continue the highway project, though on the state's dime." *Ante*, at 3. Even if Wisconsin were willing to foot the bill, the district court's judgment halts the project in its tracks. Reversing the district court's judgment would clear the way for Wisconsin to proceed using its own funds, and that alone suffices to establish redressability. See *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982) ("[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his *every* injury.") (quoted in *Massachusetts v. E.P.A.*, 549 U.S. 497, 525 (2007)). Neither *Kendall-Jackson* nor the three other precedents cited by the court say otherwise.

Although the analysis could stop there, it bears mention that Wisconsin could establish redressability, and thus standing, even if its only injury were the loss of federal funds. Recall that the judgment in *Kendall-Jackson* was an injunction prohibiting state officials from enforcing a state law. If the loss of funds were Wisconsin's only injury, and if the district court had not only vacated the record of decision and declared that it violated NEPA, but also enjoined USDOT from funding the highway project, *Kendall-Jackson* would de-

feat Wisconsin's standing. But the district court did not enjoin USDOT from doing anything. The object of its judgment was the record of decision, period; the court vacated the record of decision and declared that it violated NEPA. So an appellate decision reversing the judgment would reinstate the record of decision, and thereby reopen the gates to federal funding without any need to upset an injunction against a party, USDOT, that has not appealed.

The distinction between injunctive and declaratory relief is real, not illusory. The Civil Rules have long recognized the difference, see Fed. R. Civ. P. 57, 65, as has the Supreme Court. See *Steffel v. Thompson*, 415 U.S. 452, 469 (1974) ("[D]ifferent considerations enter into a federal court's decision as to declaratory relief, on the one hand, and injunctive relief, on the other."); *Zwicker v. Koota*, 389 U.S. 241, 254 (1967) ("[A] request for a declaratory judgment that a state statute is overbroad on its face must be considered independently of any request for injunctive relief against the enforcement of that statute."); see also *Badger Catholic, Inc. v. Walsh*, 620 F.3d 775, 782 (7th Cir. 2010) (noting that a declaration differs from an injunction, and stating that "if the entry of a regulatory injunction can be avoided by a simpler declaratory judgment, everyone comes out ahead"); *Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011) ("Where a plaintiff seeks both an injunction and declaratory relief, the district court has a duty to decide the appropriateness and the merits of the declaratory request irrespective of its conclusion as to the propriety of the issuance of an injunction.") (brackets omitted). "A declaratory judgment … is merely a declaration of legal status and rights; it neither mandates nor prohibits state action." *Perez v. Ledesma*, 401 U.S. 82, 124 (1971) (Brennan, J., concurring in part and dissenting in part). "[E]ven

though a declaratory judgment has 'the force and effect of a final judgment,' 28 U.S.C. § 2201, it is a much milder form of relief than an injunction. Though it may be persuasive, it is not ultimately coercive; noncompliance with it may be inappropriate, but is not contempt." *Id*. at 125-26 (Brennan, J., concurring in part and dissenting in part); see also *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 155 (1963) (explaining that declaratory relief operates "in a totally noncoercive fashion"); *Peterson v. Lindner*, 765 F.2d 698, 703 (7th Cir. 1985) (deeming a declaration less coercive than an injunction).

The distinction between declaratory and injunctive relief is significant for this case. Because the district court granted only declaratory relief, USDOT has no duties under the court's judgment that would remain in place if the declaration were reversed. This therefore is not a case where, "[b]ecause [USDOT] has not appealed, it [would] remain bound by [an] injunction[] no matter what happens on [Wisconsin's] appeal[]." *Kendall-Jackson*, 212 F.3d at 997. To the contrary, and as noted, if Wisconsin prevails on the merits and the record of decision is reinstated, there would be no lingering injunction that, despite Wisconsin's victory, would nonetheless preclude USDOT from funding the project.

In this sense, Wisconsin's appeal is much like the one we permitted in *Great Western Casualty Co. v. Mayorga*, 342 F.3d 816 (7th Cir. 2003). An insurer brought suit against its insured as well as the tort claimant who had sued the insured, seeking a declaration of non-coverage. *Id*. at 817. The district court ruled for the insurer; the tort claimant appealed, but the insured did not. *Ibid*. This raised the question whether the tort claimant, who had no direct relationship with the insurer, had standing to appeal. We answered yes, explain-

ing that the tort claimant's "practical interest in the [insured's] insurance status gives her standing … ." *Ibid*. Had the district court for some reason enjoined the insured from accepting coverage, its failure to appeal would, under *Kendall-Jackson*, have deprived the tort claimant of standing. But because the object of the district court's judgment was the insurance policy, not the insured, the tort claimant could appeal even though the insured had taken a powder. See also *Truck Ins. Exch. v. Ashland Oil, Inc.*, 951 F.2d 787, 789 (7th Cir. 1992) (holding that the tort claimant's right to appeal a judgment of non-coverage while the insurer stands aside "is conferred in recognition that a tort victim has a practical, albeit only a potential, financial interest in the tortfeasor's insurance policy, and the impairment of such an interest is an injury that will support standing under Article III"). Wisconsin's position here is materially identical to the tort claimant's in *Mayorga*, and the same result should be reached.

So, even if the loss of federal funds for the highway project were the only harm the district court's judgment inflicted on Wisconsin, the State still has established redressability given the nature of the judgment. And if not, Wisconsin would have established redressability based on the non-funding consequences of the judgment on its ability to proceed with the project.

This case is about redressability, but it's also about federalism. The appellants in *Kendall-Jackson*—like the appellants in *Hollingsworth*, *Diamond*, and *Princeton University*—were private actors. The appellant here is a State. This matters because "States are not normal litigants for the purposes of invoking federal jurisdiction"; rather, they are "entitled to a special solicitude in … standing analysis." *Massachusetts*, 549

U.S. at 518, 520; see also *Texas v. United States*, 809 F.3d 134, 154 (5th Cir. 2015), aff'd by an equally divided court, 136 S. Ct. 2271 (2016); *Wyoming ex rel. Crank v. United States*, 539 F.3d 1236, 1241-42 (10th Cir. 2008); *Se. Fed. Power Customers, Inc. v. Green*, 514 F.3d 1316, 1322 (D.C. Cir. 2008). Although special solicitude does not create standing where it manifestly lacks, see *Michigan v. E.P.A.*, 581 F.3d 524, 529 (7th Cir. 2009) (holding that Michigan had no standing to challenge federal regulatory action that *benefitted* it), the circumstances here warrant recognizing Wisconsin's standing.

Those circumstances concern, first and foremost, the joint efforts by USDOT and Wisconsin in developing the environmental impact statement and record of decision associated with the highway project. The federal highway funding statute provides that the States "determine which projects shall be federally financed." 23 U.S.C. § 145(a). Under NEPA, a project "significantly affecting the quality of the human environment" requires the "responsible Federal official" to ensure that an environmental impact statement has been prepared. 42 U.S.C. § 4332(C). Significantly, NEPA provides that an environmental impact statement for a federally funded state project may be "prepared by a State agency or official," so long as "the responsible Federal official furnishes guidance and participates in such preparation" and "independently evaluates such statement prior to its approval and adoption … ." 42 U.S.C. § 4332(D). The federal highway statute likewise provides that the "lead agency," a term defined to mean both USDOT *and* "any State … governmental entity serving as a joint lead agency," must prepare the record of decision and environmental impact statement. 23 U.S.C. § 139(a)(4), (c)(6), (n)(2); see also 23 C.F.R. § 771.109(c)(1) ("The lead agencies are responsible for man-

aging the environmental review process and the preparation of the appropriate environmental review documents.").

As Wisconsin notes in its post-argument brief, that is precisely what happened here. The record of decision lists both USDOT and WisDOT as lead agencies. Significant portions of the record of decision were prepared by Wisconsin alone. The district court's decision recognizes this, referring (in a non-complimentary way) to what "WisDOT prepared," what "WisDOT had not fully explained," the "methodology that WisDOT purported to use," what "WisDOT had failed to identify," and "WisDOT's conclusion." The district court even observed that "WisDOT … seems to have performed most of the work that is at issue in this suit."

Despite all this, the court says that NEPA "applies only to the national government." *Ante*, at 3. Whether this is correct as a purely formal matter—and it likely is not given the extensive federal-state cooperation that NEPA expressly contemplates—is immaterial. As we have explained, "the solidest grounds [for standing] are practical," as "[t]he doctrine is needed … to prevent the federal courts from being overwhelmed by cases, and to ensure that the legal remedies of primary victims of wrongful conduct will not be usurped by persons trivially or not at all harmed by the wrong complained of." *Am. Bottom Conservancy v. U.S. Army Corps of Eng'rs*, 650 F.3d 652, 656 (7th Cir. 2011). Wisconsin's involvement here is by no means trivial; it was not simply an interested bystander to the preparation of the environmental impact statement and record of decision. Rather, as the co-lead agency, Wisconsin was integrally and intimately involved, and its extensive participation was expressly contemplated by NEPA. Thus, even if the conventional redress-

ability analysis were close—which it is not, particularly given that the district court entered judgment against both USDOT and WisDOT, and that the judgment prohibits Wisconsin from proceeding with the project even with its own money—the special solicitude we owe Wisconsin as a State would require finding that it has established redressability and accordingly has standing to pursue this appeal.

Recognizing Wisconsin's standing does not contravene *Greenlaw v. United States*, 554 U.S. 237 (2008). The court describes *Greenlaw* as holding that an appeals court "cannot modify a judgment to make it more favorable to a party that did not file a notice of appeal." *Ante*, at 5. *Greenlaw* is not so broad; it holds only that an appeals court cannot modify a judgment to make it more favorable to a non-appealing party *if* the non-appealing party was the appellee and did not cross-appeal. 554 U.S. at 244–45 ("[I]t takes a cross-appeal to justify a remedy in favor of an appellee."); see also, *e.g.*, *Richardson v. City of Chicago*, 740 F.3d 1099, 1101-02 (7th Cir. 2014) (citing *Greenlaw* to justify leaving undisturbed a component of the district court's judgment that harmed an appellee who did not cross-appeal); *Harris v. Quinn*, 656 F.3d 692, 694 n.1 (7th Cir. 2011) (same), rev'd in part on other grounds, 134 S. Ct. 2618 (2014); *American Bottom Conservancy v. U.S. Army Corps of Eng'rs*, 650 F.3d 652, 660 (7th Cir. 2011) (same); *United States v. Avila*, 634 F.3d 958, 961 (7th Cir. 2011) (referring to *Greenlaw* as imposing a "cross-appeal rule"); *Onyango v. Nick & Howard, LLC*, 607 F. App'x 552, 556 (7th Cir. 2015) (same as *Richardson*); *Anderson v. Anderson*, 554 F. App'x 529, 531 (7th Cir. 2014) (same); *United States v. Hollis*, 445 F. App'x 888, 889 (7th Cir. 2011) (same). *Greenlaw* does not warrant dismissing an appeal brought by a losing party on the ground that another losing party did not appeal. In fact, as

discussed above, we allowed precisely such appeals in *Great Western Casualty Co. v. Mayorga*, *supra*, and *Truck Insurance Exchange v. Ashland Oil, Inc.*, *supra*.

Imagine a case, much like *Massachusetts* and *Texas*, where several States bring suit to enjoin the federal government to do X—say, more vigorously enforce the environmental laws, or the immigration laws, in certain respects. Suppose that the district court enters judgment for the federal government and that all but one of the States appeal. Reversing the judgment would benefit the non-appealing State by enjoining the federal government to do X, but would that fact deprive the other States of standing to appeal and thereby disable the appeals court from hearing their appeal? Of course not, and any reading of *Greenlaw* that would lead to that result is incorrect. Cf. *Massachusetts*, 549 U.S. at 518 (allowing the case to proceed upon finding that one State, Massachusetts, had standing, noting that "[o]nly one of the petitioners needs to have standing to permit us to consider the petition for review"); *Texas*, 809 F.3d at 146 n.2, 155 (same, where the one State was Texas).

For these reasons, I respectfully dissent from the dismissal of Wisconsin's appeal for lack of a justiciable controversy, and would proceed to the merits.